Paul Hunter
Attorney at Law
2616 Central Avenue
Cheyenne, Wyoming 82001
307-637-0212 307-637-0262 (Fax)
attypaulhunter@prodigy.net

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case Number 16-20002 |
| Dennis Meyer Danzik, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

**MOTION FOR ORDER GRANTING RELIEF FROM THE AUTOMATIC
STAY AND NOTICE OF OPPORTUNITY TO OBJECT**

COMES NOW Sigma Opportunity Fund II, LLC, (hereinafter "Sigma"), pursuant to 11

U.S.C. § 362(d), Rule 4001 Fed. R. Bankr. P., and Wyoming L.B.R. 4001-1, and moves the

court for an order modifying the automatic stay to permit the movant to seek the entry of a state

court judgement against the debtor in possession Dennis Meyer Danzik (hereinafter "Danzik").

The Movant respectfully states the following in support of this motion:

1.    Danzik filed a voluntary Chapter 11 petition in this court on January 2, 2016.

2.    On May 7, 2014, Sigma entered into an agreement to advance funds to an entity

called RDX Technologies Corporation (hereinafter "RDX").    Danzik controlled RDX as the

Chief Executive Officer of RDX and board member thereof.    Danzik signed a personal

guarantee for the RDX loan.    A copy of the pertinent pages from the loan agreement and

guaranty is attached as Exhibit "A".

3.    RDX later defaulted on the Sigma loan agreement.    RDX filed a Chapter 11 petition

in the United States Bankruptcy Court for the District of Arizona (Case Number 15-bk-15859-

PS).    A copy of the docket sheet is attached as Exhibit "B."

4.    SIGMA filed a civil action against Danzik in the Supreme Court of the State of New

York, County of New York (hereinafter "Supreme Court ") on August 19, 2015, after RDX

defaulted on its loan agreement.   Danzik filed an answer on September 8, 2015.    Sigma filed a

motion for summary judgement on October 16, 2015.    Danzik failed to file a timely response to

Sigma's summary judgment motion.

5.   Sigma filed a suggestion of bankruptcy with the Supreme Court on January 12, 2016.

Danzik has not filed a Notice of Automatic Stay in the Supreme Court nor was the Supreme

Court's mailing address included on Danzik's official Chapter 11 mailing matrix.

6.  The Honorable Jeffrey K. Oing signed a judgment on January 12, 2016, and awarded

Sigma $2,340,800 in damages plus interest at the statutory rate of 9%.   A copy of the judgment

is attached as Exhibit "C."  The judgment has not been entered by the Clerk of the Supreme

Court, presumably because Sigma filed the suggestion of bankruptcy.

7.  Danzik has no basis to dispute Sigma's debt and did not do so on his sworn schedules.

A copy of the pertinent page from the Schedule F is attached as Exhibit "D."

8.    Assuming, *arguendo*,  Danzik intends to file a claim objection, the Supreme Court is

the most suitable court to decide the claim because the matter has been fully litigated-but for the

ministerial act of the judgment being entered by the clerk of the court.

9.    Another creditor with a significant claim against Danzik, CWT Canada II Limited

Partnership (hereinafter CWT), filed a motion for stay relief on February 18, 2016.  It is not

completely clear exactly what relief CWT is seeking.   CWT states on page 2 of its memorandum

in support of its motion that granting stay relief will not permit it to collect funds from the

debtor's estate until the plan is confirmed.   The proposed order does not contain a parallel

provision.  The relief sought by Sigma in its motion is clear and precisely limited-the entry of a

signed judgment by the Clerk of the Supreme Court.  Sigma will seek a supplemental order

granting stay relief if it deems that is necessary to protect its interests.

10.  Sigma is concerned that it may be prejudiced if CWT is able to obtain a final

judgment and Danzik's Chapter 11 proceeding is then dismissed.  CWT would be able to enforce

its judgment immediately while Sigma takes steps to finalize the judgment.

11.  Sigma is also concerned that CWT may improperly exercise control over assets or

interests that ultimately be determined to be properly of this estate.

12.  Danzik will not be able to effectively reorganize under Chapter 11 for the following

reasons:

a.  A representative of the IRS indicated at the Section 341 meeting that Danzik has

failed to file federal income tax returns for about 20 years.

b.  Danzik will undoubtedly have to litigate objections to dischargeability and discharge.

Danzik submitted a financial statement to Sigma before the funds were advanced to RDX and

before he signed the personal guarantee.   The financial statement stated that his tax obligations

totaled $5,412, presumably the real property taxes for his home in Cody, Wyoming.   Danzik

stated on his sworn schedules, however, that he owes the IRS $960,532.74 for taxes incurred

between 2006 and 2015.   A copy of the pertinent page from the Schedule F is attached as

Exhibit "E."   Sigma is certain that the financial statement contains other material misstatements

regarding his assets and liabilities.  Sigma will attend the continued Section 341 meeting and

may examine Danzik at a 2004 Examination.  Sigma is certain that Danzik has not listed assets

on his petition nor provided accurate information to the court.

c.  Danzik did not file a projection of income and expenses with his initial financial

report.   From Danzik's testimony at the Section 341 meeting, it is apparent that Danzik will not

be able to generate sufficient income to fund the plan and presently seems unwilling to liquidate any property.

d. Sigma and CWT will undoubtedly control the voting by number and dollar amount of claims.  Danzik will not be able to overcome objections that the plan violates the absolute priority rule.  *In re Stephens*, 704 F.3d 1279, 1286 (10th Circuit 2013).

13.   Irreparable injury, loss and damage will be suffered by the movant if relief under 11 U.S.C. § 362(d) is denied.  Most notably, Sigma will not be able to enforce its judgment immediately after the dismissal of this case.

14.  Movant requests that the order granting this motion be effective immediately and that the Court waive the fourteen-day stay provided by F.R.B.P. 4001(a)(3). Waiving the stay in this case is appropriate.  Merely entering the judgment by the clerk does not injure or affect the estate.

WHEREFORE, it is respectfully requested that this court enter an order granting relief from the automatic stay and to permit SIGMA to request that the Clerk of the Supreme Court enter the judgment, to lift the stay so that the clerk may enter the judgment, or other relief as the court deems just or necessary.

DATED this 22nd day of February, 2016.

Respectfully submitted,
/s/_____
Paul Hunter 52251
Counsel for Sigma Opportunity Fund II, LLC

**NOTICE OF MOTION FOR ORDER
GRANTING RELIEF FROM AUTOMATIC STAY**

YOU ARE HEREBY NOTIFIED that the foregoing Motion for Order Granting Relief

from Automatic Stay, has been filed with this Court.   YOU ARE NOTIFIED THAT IF YOU

DESIRE to oppose this motion, you must file with the Court and serve on the undersigned and

the Trustee in the case, a written objection to the requested relief on or before March 10, 2016. In

the absence of a timely objection, the relief sought may be granted by the Court without further

hearing. If you file a written response, the Court will set the matter for, and provide notice of, a

hearing.

DATED this 22nd day of February, 2016.

Respectfully submitted,

/s/_____
Paul Hunter 52251
Counsel for Sigma Opportunity Fund II, LLC

CERTIFICATE OF SERVICE

The undersigned does certify that on the 22nd day of February, 2016, a true and correct

copy of the above and foregoing MOTION FOR ORDER GRANTING RELIEF FROM

AUTOMATIC STAY, WITH NOTICE OF MOTION FOR ORDER GRANTING RELIEF

FROM AUTOMATIC STAY, and proposed order  was  addressed and served as follows:

U.S. Trustee  (Electronic)

Ken McCartney
The Law Offices of Ken McCartney, P.C. (Electronic)
P.O. Box 1364
Cheyenne, WY 82003

Jeffrey M. Eilender (Electronic)
SCHLAM STONE & DOLAN LLP
26 Broadway
New York, NY 10004

US Mail Postage Prepaid First Class

Dennis Meyer Danzik
1108 14th Street
Cody, WY 82414

The 20 largest unsecured creditors –list attached

/s/_____
          Paul Hunter

Label Matrix for local noticing
1089-2
Case 16-20002
District of Wyoming
Cheyenne
Mon Feb 22 13:59:12 MST 2016

BANK OF AMERICA
P.O. BOX 15019
WILMINGTON, DE 19850-5019

BILTMORE LOAN
7025 N. SCOTTSDALE ROAD, SUITE 105
SCOTTSDALE, AZ 85253-3668

CHASE BANK-UNITED VISA
P.O. BOX 94014
PALATINE, IL 60094-4014

CITI BANK-DIAMOND PREFERRED
P.O. BOX 6500
SIOUX FALLS, SD 57117-6500

CITI BANK-DIVIDEND
P.O. BOX 6500
SIOUX FALLS, SD 57117-6500

CITI BANK-REWARDS PLUS
P.O. BOX 6500
SIOUX FALLS, SD 57117-6500

CWT CANADA II LIMITED PARTNERSHIP
C/O BRADLEY T. HUNSICKER
MARKUS WILLIAMS YOUNG & ZIMMERMAN LLC
106 E. LINCOLNWAY, SUITE 300
CHEYENNE, WY 82001-4535

DINER'S CLUB
P.O. BOX 6101
CAROL STREAM, IL 60197-6101

HOME DEPOT CREDIT
P.O. BOX 790328
ST. LOUIS, MO 63179-0328

(p) INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

LISA HEIL
P.O. BOX 35336
PHOENIX, AZ 85069-5336

SIGMA OPPORTUNITY FUND
100 3RD AVENUE, 17TH FLOOR
NEW YORK, NY 10022-7604

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Internal Revenue Service
1999 Broadway
MS 5012DEN
Denver, CO  80202-3025

End of Label Matrix
Mailable recipients    12
Bypassed recipients     0
Total                  12

THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "1933 ACT"). PURSUANT TO THE NOTE PURCHASE AGREEMENT, THIS NOTE HAS BEEN ACQUIRED FOR INVESTMENT ONLY AND MAY NOT BE SOLD, TRANSFERRED OR ASSIGNED IN THE ABSENCE OF REGISTRATION OF THE RESALE THEREOF UNDER THE 1933 ACT OR AN OPINION OF COUNSEL REASONABLY SATISFACTORY IN FORM, SCOPE AND SUBSTANCE TO THE COMPANY THAT SUCH REGISTRATION IS NOT REQUIRED.

**RDX TECHNOLOGIES CORPORATION**
**RIDGELINE ENERGY SERVICES (USA) INC.**
**SFS REAL ESTATE & RECOVERY, LLC**
**RDX ENERGY GROUP, LLC**
**RDX WATER GROUP, LLC**
**RDX APPLIED TECHNOLOGIES I, LLC**

**AMENDED AND RESTATED SENIOR SECURED CONVERTIBLE NOTE**

No. 1                                                                               $2,280,000
New York, New York                                                          October 3rd, 2014

FOR VALUE RECEIVED, RDX Technologies Corporation, a Canadian corporation, Ridgeline Energy Services (USA), Inc., a Delaware corporation, SFS Real Estate & Recovery, LLC, a Delaware limited liability company, RDX Energy Group, LLC a Delaware limited liability company, RDX Water Group, LLC, a Delaware limited liability company, and RDX Applied Technologies I, LLC, a Delaware limited liability company (collectively, the "Company"), as co-borrowers, hereby promise to pay to Sigma Opportunity Fund II, LLC, located at 800 Third Avenue, New York, NY 10022, or its registered permitted assigns (the "Holder"), or order, the principal sum of Two Million Two Hundred Eighty Thousand dollars ($2,280,000) or such lesser amount that is due hereunder, on the Maturity Date, and to pay interest on the unpaid principal balance hereof at the Applicable Rate from the date hereof until the same becomes due and payable, whether at maturity or upon acceleration or otherwise. Any amount, including, without limitation, principal of or interest on this Note, that is payable under this Note and that is not paid when due shall bear interest at the Default Rate from the due date thereof until the same is paid ("Default Interest") and shall be compounded and added to the principal monthly. Regular interest shall be payable in arrears on each Interest Payment Date, on the principal amount outstanding on such date. Regular interest on this Note shall be computed on the basis of a 360-day year of twelve 30-day months and actual days elapsed.

All cash payments under this Note shall be made in lawful money of the United States of America and shall be made by wire transfer of immediately available funds to such account as the Holder may from time to time designate by written notice in accordance with the provisions of this Note. Whenever any amount expressed to be due by the terms of this Note is due on any day which is not a Business Day, the same shall instead be due on the next



EXHIBIT
Sigma RAS
Exhibit A



succeeding day which is a Business Day. Certain capitalized terms used in this Note are defined in Article III of this Note.

This Note is issued pursuant to the Note Purchase Agreement and the Holder of this Note and this Note are subject to the terms and entitled to the benefits of the Note Purchase Agreement and the other Transaction Documents. This Note is securitized against the accounts receivable of the Company, and the Deed of Trust, as further set forth in the Security Agreement and other Transaction Documents.

The following terms shall apply to this Note:

# ARTICLE I

## CERTAIN COVENANTS

Until this Note is repaid or otherwise satisfied:

**1.1    Limitations on Certain Indebtedness.** The Company will not itself, and will not permit any Subsidiary to, create, amend, assume, incur, suffer to exist or in any manner become liable in respect of, including, without limitation, by reason of any business combination transaction (all of which are referred to herein as "incurring"), any Indebtedness other than Permitted Indebtedness.

**1.2    Payment of Obligations.** The Company will pay and discharge, and will cause each Subsidiary to pay and discharge, subject to the terms and conditions of the Note Purchase Agreement, all their respective material obligations and liabilities as they become due, and shall not accelerate in any material respect the payment of any such obligations or liabilities, except where the same may be contested in good faith by appropriate proceedings and the Company shall have established adequate reserves therefor on its books.

**1.3    Maintenance of Property; Insurance.** (a) The Company will keep, and will cause each Subsidiary to keep, all property which, in the reasonable business judgment of the Company, is useful and necessary in its business in good working order and condition, ordinary wear and tear excepted.

(b)    The Company will maintain, and will cause each Subsidiary to maintain insurance in at least such amounts and against such risks as the Company currently maintains for the conduct of their respective businesses and the value of their respective properties.

**1.4    Conduct of Business and Maintenance of Existence.** The Company will continue, and will cause each Subsidiary to continue, to engage in business of the same general type as now conducted by the Company, and will preserve, renew and keep in full force and effect, and will cause each Subsidiary to preserve, renew and keep in full force and effect, their respective corporate existence and their respective rights, privileges and franchises necessary or desirable in the normal conduct of business, except where the failure to do so would not have a material adverse effect on (i) the business, properties, operations, financial condition

-2-



or results of operation of the Company and the Subsidiaries, taken as a whole, or (ii) the ability of the Company to pay and perform its obligations under the Transaction Documents.

1.5    **Compliance with Laws.**  The Company will comply, and will cause each Subsidiary to comply, with all applicable laws, ordinances, rules, regulations, decisions, orders and requirements of governmental authorities and courts (including, without limitation, environmental laws) except where compliance therewith is contested in good faith by appropriate proceedings or where the failure to so comply could not reasonably be expected to have a material adverse effect on the Company and its Subsidiaries taken as a whole.

1.6    **Investment Company Act.**  The Company will not be or become an open-end investment trust, unit investment trust or face-amount certificate company that is or is required to be registered under Section 8 of the Investment Company Act of 1940, as amended.

1.7    **Limitations on Asset Sales, Liquidations, Etc.; Certain Matters.**

The Company shall not:

(a)    sell, convey, lease, license or otherwise dispose of the assets of the Company or any Subsidiary other than in the ordinary course of business consistent with past practice without prior written consent of Holder; or

(b)    liquidate, dissolve or otherwise wind up the affairs of the Company or any Subsidiary without prior written consent of the Holder.

1.8    **Limitation on Certain Issuances.**  Beginning as of the date of this Note and so long as the Note is outstanding, the Company shall not, and shall cause each Subsidiary not to, without the prior written consent of Holder, issue or sell or agree to issue or sell any debt securities (other than Permitted Indebtedness).

1.9    **Limitations on Liens.**  Without the prior written consent of the Holder, the Company will not itself, and will not permit any Subsidiary to, create, assume or suffer to exist any mortgage, lien, pledge, security interest or other charge or encumbrance (including, without limitation, the lien or retained security title of a conditional vendor), all of which are referred to below as "liens", upon all or any part of its property of any character, whether owned at the date hereof or thereafter acquired, except:

(a)    liens upon any property of any Subsidiary or Subsidiaries as security for indebtedness owing by such Subsidiary to the Company;

(b)    liens securing this Note;

(c)    liens existing on the Issuance Date and listed in Schedule 4(r) to the Note Purchase Agreement; and

(d)    Permitted Liens.

-3-



**1.10    Transactions with Affiliates.**  The Company will not pay, and will not permit any Subsidiary, directly or indirectly, to pay, any funds to or for the account of, make any investment (whether by acquisition of stock or Indebtedness, by loan, advance, transfer of property, guarantee or other agreement to pay, purchase or service, directly or indirectly, any Indebtedness, or otherwise) in, lease, sell, transfer or otherwise dispose of any assets, tangible or intangible, to, or participate in, or effect any transaction in connection with, any joint enterprise or other joint arrangement with, any Affiliate of the Company other than the Company or other than in the ordinary course of business.  The Company further represents and agrees that neither Dennis M. Danzik nor any of his Affiliates, including without limitation Danzik Applied Sciences, LLC ("DAS"), will be paid their 10% commission from this financing as contemplated by that certain Development and Supply Agreement, dated as of April 18, 2011, between the RDX Technologies Corporation and DAS.

**1.11    Notice of Defaults.**  The Company shall notify the Holder promptly, but in any event not later than five business days after the Company becomes aware of the fact, of any failure by the Company to comply with this Article I.

**1.12    Sale of the Premises.**  The Company shall use its best efforts to enter in an agreement with Goodman Birtcher (or any other entity) for the sale of the Premises within thirty (30) days of the Closing Date.  The sale of the Premises shall occur within twelve (12) months from the Closing Date.

**1.13    Additional Covenants.**  The Company hereby acknowledges that RDX Technologies Corporation is the sole shareholder of RDX Technologies USA Corporation ("RDX USA") and agrees that until the obligations of Borrower under the Transaction Documents are satisfied in full: (i) RDX USA shall not pledge or encumber any interest it has in SFS or RUSA; and (ii) RDX USA shall not generate any receivables that are not subject to a security interest in favor of Holder.

## ARTICLE II

## EVENTS OF DEFAULT

**2.1**    If any of the following events of default (each, an "Event of Default") shall occur:

**(a)    Failure to Pay Principal, Interest, Etc.**  The Company fails to pay any principal or interest or other amount when due hereunder, whether at maturity, upon acceleration or otherwise, as applicable; or

**(b)    Conversion and the Shares.**  The Company fails to issue or cause to be issued shares of Common Stock to the Holder upon exercise of the conversion rights of the Holder within three Business Days after the due date therefor in accordance with the terms of this Note or fails to transfer any certificate for any such shares of Common

Stock as and when required by this Note and the Note Purchase Agreement, as the case may be; or

(c) **Breach of Certain Covenants.** The Company fails to comply with Section 1.1, 1.7, 1.8 or 1.9 of this Note or Section 5(l) of the Note Purchase Agreement or Section 5(a) of the Advisory Services Agreement; or

(d) **Breach of Other Covenants.** The Company fails to comply in any material respect with any other provision of Article I of this Note (other than Section 1.1, 1.7, 1.8 or 1.9) or breaches in any material respect any other covenant or other term or condition of this Note or any of the other Transaction Documents (other than as specifically provided in clauses (a), (b) and (c) of this Section 2.1), and such breach continues for a period of ten days after written notice thereof to the Company from the Holder; or

(e) **Breach of Representations and Warranties.** Any representation or warranty of the Company made herein or in any agreement, statement or certificate given in writing pursuant hereto (or pursuant to any Transaction Documents) shall be false or misleading in any material respect when made; or

(f) **Certain Voluntary Proceedings.** The Company or any Subsidiary shall commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official of it or any substantial part of its property, or shall consent to any such relief or to the appointment of or taking possession by any such official in an involuntary case or other proceeding commenced against it or shall make a general assignment for the benefit of creditors; or

(g) **Certain Involuntary Proceedings.** An involuntary case or other proceeding shall be commenced against the Company or any Subsidiary seeking liquidation, reorganization or other relief with respect to it or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official of it or any substantial part of its property, and such involuntary case or other proceeding shall remain unbounded, undismissed and unstayed for a period of 60 consecutive days; or

(h) **Judgments and Governmental Actions.** Any court of competent jurisdiction or any governmental authority shall enter one or more final non-appealable judgments against the Company or any Subsidiary or any of their respective properties or other assets, which find the Company or any Subsidiary liable for any damages or past due unpaid liabilities, including in respect of any unpaid taxes, including federal or state income, sales, use or other taxes, in an aggregate amount in excess of $100,000 not covered by insurance, and such judgment(s) remain unpaid for a period exceeding 15 days; or

-5-

(i) **Default Under Other Agreements**. The Company or any Subsidiary shall default (after notice of default and lapse of any applicable grace period) on any of its obligations under any material mortgage, loan, credit agreement or other facility, indenture agreement, factoring agreement or other instrument under which there may be issued, or by which there may be secured or evidenced, any indebtedness for borrowed money or money due under any long term leasing or factoring arrangement; or

(j) **Fundamental Change**. A Fundamental Change shall have occurred;

then, upon the occurrence and during the continuation of any Event of Default specified in clause (a), (b),(c), (d), (e), (h), (i) or (j) of this Section 2.1, at the option of the Holder, and upon the occurrence of any Event of Default specified in clause (f) or (g) of this Section 2.1: (A) the Company shall pay to the Holder an amount equal to the outstanding principal amount of this Note *plus* accrued and unpaid interest on such principal amount to the date of payment *plus* accrued and unpaid Default Interest, if any, thereon at the rate provided in this Note to the date of payment, (B) all other amounts payable hereunder or under any of the other Transaction Documents shall immediately become due and payable, all without demand, presentment or notice, all of which hereby are expressly waived, together with all costs, including, without limitation, reasonable legal fees and expenses of collection, and (C) the Holder shall be entitled to exercise all other rights and remedies available at law or in equity, including any rights and remedies provided for in this Note and/or in any other Transaction Document.

## ARTICLE III

## DEFINITIONS

3.1 **Certain Defined Terms.** (a) All the agreements or instruments herein defined shall mean such agreements or instruments as the same may from time to time be supplemented or amended or the terms thereof waived or modified to the extent permitted by, and in accordance with, the terms thereof and of this Note.

(b) The following terms shall have the following meanings (such meanings to be equally applicable to both the singular and plural forms of the terms defined):

"Affiliate" means, with respect to any Person, any other Person that directly, or indirectly through one or more intermediaries, controls, is controlled by or is under common control with the subject Person. For purposes of this definition, "control" (including, with correlative meaning, the terms "controlled by" and "under common control with"), as used with respect to any Person, shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or by contract or otherwise.

"Applicable Rate" means ten (10%) percent per annum. If an Event of Default shall occur, then so long as any Event of Default shall continue, the Applicable Rate shall be the Default Rate (or, in any case, such lesser rate as shall be the highest rate permitted by applicable law).

-6-



"Board of Directors" means the Board of Directors of the Company or a Subsidiary, as applicable.

"Business Day" means any day other than a Saturday, Sunday or a day on which commercial banks in the City of New York are authorized or required by law or executive order to remain closed.

"Common Stock" means the common stock, no par value per share, of RDX Technologies Corporation.

"Company" shall have the meaning provided in the first paragraph of this Note.

"Conversion Amount" shall mean the principal, interest or other amount due hereunder.

"Conversion Date" means the date on which a Conversion Notice is given in accordance with Section 4.2.

"Conversion Notice" shall have the meaning provided in Section 4.1.

"Conversion Price" shall mean $0.25 per share (subject to adjustment for any reorganizations, stock splits, stock dividends, or other similar transactions occurring after the Issuance Date).

"Conversion Shares" shall have the meaning provided in Section 4.1.

"Deed of Trust" has the meaning provided in the Note Purchase Agreement.

"Default Interest" shall have the meaning provided in the first paragraph of this Note.

"Default Rate" means twenty-two (22%) percent per annum (or such lesser rate as shall be the highest rate permitted by applicable law).

"Event of Default" shall have the meaning provided in Section 2.1.

"Fundamental Change" means

(a)    Any consolidation or merger of any entity comprising the Company or any Subsidiary with or into another entity (other than a merger or consolidation of a Subsidiary into the Company or a wholly-owned Subsidiary), or the occurrence of any transaction or event in connection with which all or substantially all of the Common Stock shall be exchanged for, converted into, acquired for or constitute the right to receive consideration (whether by means of an exchange offer, liquidation, tender offer,

-7-

consolidation, merger, combination, reclassification, recapitalization or otherwise), where the stockholders of any entity comprising the Company immediately prior to such transaction do not collectively own at least 51% of the outstanding voting securities of the surviving corporation of such consolidation, merger or other transaction immediately following such transaction; or the sale of all or substantially all of the assets of the Company or the Subsidiaries in a single transaction or a series of related transactions; or

(b)     The acquisition by a Person or entity or group of Persons or entities acting in concert as a partnership, limited partnership, syndicate or group, as a result of a tender or exchange offer, open market purchases, privately negotiated purchases or otherwise, of beneficial ownership of securities of the Company representing 51% or more of the (i) combined voting power of the outstanding voting securities of the Company ordinarily (and apart from rights accruing in special circumstances) having the right to vote in the election of directors or (ii) fully diluted shares of Common Stock.

"Holder" shall have the meaning provided in the first paragraph of this Note.

"Indebtedness" as used in reference to any Person means all indebtedness of such Person for borrowed money, the deferred purchase price of property, goods and services (other than traditional trade payment terms up to ninety days or longer than ninety days, if consistent with past practice with respect to a particular supplier or vendor) and obligations under leases which are required to be capitalized in accordance with International Financial Reporting Standards and shall include all such indebtedness guaranteed in any manner by such Person or in effect guaranteed by such Person through a contingent agreement to purchase and all indebtedness for the payment or purchase of which such Person has contingently agreed to advance or supply funds and all indebtedness secured by mortgage or other lien upon property owned by such Person, although such Person has not assumed or become liable for the payment of such indebtedness, and, for all purposes hereof, such indebtedness shall be treated as though it has been assumed by such Person.

"Interest Payment Date" means the first day of each calendar quarter commencing on the Closing Date through and including the Maturity Date.

"International Financial Reporting Standards" or "IFRS" for any Person means the accounting principles and practices applied by such Person from time to time in the preparation of its audited financial statements.

"Issuance Date" means October 3rd, 2014.

"Maturity Date" means the earlier of (i) December 31, 2015 or (ii) consummation of the sale of a material portion of the business, assets or equity of the Company, including but not limited to the sale of a business unit, sale of the Premises or sale of the Water Property Rights, whether by merger, consolidation, asset sale, stock sale or otherwise. In the event that there is a sale of the Premises at the option of the Holder, the Borrower agrees to segregate and deposit all amounts owing hereunder into a deposit account ("Controlled Account") maintained at a financial institution agreed to by the parties hereto pursuant to an account control agreement

-8-



(the "Account Control Agreement") in form and substance satisfactory to Purchaser until December 31, 2015, and such amount shall continue to bear interest and be payable on the terms set forth herein. On December 31, 2015 all amounts maintained in the Controlled Account shall be released to Holder.

"1933 Act" means the Securities Act of 1933, as amended.

"Note" means this instrument as originally executed, or if later amended or supplemented in accordance with its terms, then as so amended or supplemented.

"Note Purchase Agreement" means the Note Purchase Agreement, dated as of October __, 2014, by and between the Company and the Holder.

"Permitted Indebtedness" means

(1)    Indebtedness outstanding on the Issuance Date prior to issuance of this Note on the terms existing on the Issuance Date and listed on Schedule 4(l) to the Note Purchase Agreement;

(2)    Indebtedness evidenced by the Note;

(3)    Indebtedness incurred after the Issuance Date which is unsecured and expressly subordinated to this Note on the terms acceptable to Holder and would not impair the Company's ability to make payment on this Note pursuant to its terms;

(4)    endorsements for collection or deposit in the ordinary course of business; or

(5)    in the case of any Subsidiary, Indebtedness owed by such Subsidiary to the Company;

so long as at the time of incurrence of such Indebtedness no Event of Default has occurred and is continuing or would result from such incurrence and no event which, with notice or passage of time, or both, would become an Event of Default has occurred and is continuing or would result from such incurrence and so long as in the case of such Indebtedness referred to in the preceding clause (3) and (4), inclusive, such Indebtedness shall have been approved by the Board of Directors prior to the incurrence thereof.

"Permitted Lien" means the individual and collective reference to the following: (a) liens for taxes, assessments and other governmental charges or levies not yet due or liens for taxes, assessments and other governmental charges or levies being contested in good faith and by appropriate proceedings for which adequate reserves (in the good faith judgment of the management of the Company) have been established in accordance with IFRS; or (b) liens imposed by law which were incurred in the ordinary course of the Company's business, such as carriers', warehousemen's and mechanics' liens, statutory landlords' Liens, and other similar liens arising in the ordinary course of the Company's business, and which (x) do not individually

-9-

or in the aggregate materially detract from the value of such property or assets or materially impair the use thereof in the operation of the business of the Company and its consolidated Subsidiaries or (y) are being contested in good faith by appropriate proceedings, which proceedings have the effect of preventing for the foreseeable future the forfeiture or sale of the property or asset subject to such Lien; or (c) liens securing Permitted Indebtedness.

"Person" means any natural person, corporation, partnership, limited liability company, trust, incorporated organization, unincorporated association or similar entity or any government, governmental agency or political subdivision.

"Property Water Rights" means the Los Angeles County Sanitation District ("LACSD") discharge permit.

"Security Agreement" means the Security Agreement, dated May 7, 2014, by and between the Company and the Holder, as amended.

"Subsidiary" means any corporation or other entity of which a majority of the capital stock or other ownership interests having ordinary voting power to elect a majority of the board of directors or other Persons performing similar functions are at the time directly or indirectly owned by the Company or any other entity that the Company effectively controls, directly or indirectly, through ownership, rights, agreements or otherwise.

"Transaction Documents" has the meaning provided in the Note Purchase Agreement.

## ARTICLE IV

## CONVERSION

4.1    **Right to Convert.**  Subject to and upon compliance with the provisions of this Note, the Holder shall have the right, at the Holder's option, at any time to convert all or a portion of the Conversion Amount into that number of fully paid and non-assessable shares of Common Stock (as such shares shall then be constituted) (the "Conversion Shares") obtained by dividing the Conversion Amount being converted by the Conversion Price in effect on the applicable Conversion Date, by giving written notice to the Company in the manner provided in Section 4.2 (a "Conversion Notice").

4.2    **Exercise of Conversion Privilege; Issuance of Common Stock on Conversion.**

(a)    In order to exercise the conversion privilege with respect to this Note, the Holder shall deliver a Conversion Notice to the Company.  As promptly as practicable, but in no event later than three Business Days after a Conversion Notice is given, the Company shall issue and shall deliver to the Holder or the Holder's designee the number of Conversion Shares issuable pursuant to Section 4.1 of this Note.  Conversion of this Note shall be deemed to have been effected on the Conversion Date and the person in whose name any certificate or certificates for Conversion Shares shall be issuable upon such conversion shall be deemed to

-10-



have become on such Conversion Date the holder of record of the shares represented thereby; provided, however, that if a Conversion Date is a date on which the stock transfer books of the Company shall be closed such conversion shall constitute the person in whose name the certificates are to be issued as the record holder thereof for all purposes on the next succeeding day on which such stock transfer books are open.

(b)     If the Holder shall have given a Conversion Notice in accordance with the terms of this Note, the Company's obligation to issue and deliver the certificates for Conversion Shares shall be absolute and unconditional, irrespective of any action or inaction by the Holder to enforce the same, any waiver or consent with respect to any provision hereof, the recovery of any judgment against any person or any action to enforce the same, any failure or delay in the enforcement of any other obligation of the Company to the Holder, or any setoff, counterclaim, recoupment, limitation or termination, or any breach or alleged breach by the Holder or any other person of any obligation to the Company or any violation or alleged violation of law by the Holder or any other person, and irrespective of any other circumstance which might otherwise limit such obligation of the Company to the Holder in connection with such conversion; provided, however, that nothing herein shall limit or prejudice the right of the Company to pursue any such claim in any manner permitted by applicable law.

(c)     If in any case the Company shall fail to issue and deliver the Conversion Shares to the Holder in connection with a particular conversion of this Note within three Business Days after the Holder gives the Conversion Notice for such conversion, in addition to any other liabilities the Company may have hereunder and under applicable law, the Company shall pay or reimburse the Holder on demand for all out-of-pocket expenses, including, without limitation, reasonable fees and expenses of legal counsel, incurred by the Holder as a result of such failure.

### ARTICLE V

### MISCELLANEOUS

**5.1     Failure or Indulgency Not Waiver.** No failure or delay on the part of the Holder in the exercise of any power, right or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such power, right or privilege preclude other or further exercise thereof or of any other right, power or privileges. All rights and remedies existing hereunder are cumulative to, and not exclusive of, any rights or remedies otherwise available.

**5.2     Notices.** Except as otherwise specifically provided herein, any notice herein required or permitted to be given shall be in writing and may be personally served, sent by telephone line facsimile transmission or delivered by courier (e.g., Federal Express) or sent by United States mail and shall be deemed to have been given upon receipt if personally served, sent by telephone line facsimile transmission or sent by courier or five days after being deposited in the facilities of the United States Postal Service, certified, with postage pre-paid and properly addressed, if sent by mail. For the purposes hereof, the address and facsimile line transmission number of the Holder shall be as furnished by the Holder for such purpose and shown on the

-11-



records of the Company; and the address of the Company shall be 14555 North 82nd Street, Scottsdale, Arizona 85260, Attention: Chief Executive Officer (telephone line facsimile transmission number (602) 845-8935)). The Holder or the Company may change its address for notice by service of written notice to the other as herein provided.

5.3    **Amendment, Waiver, Etc.** Neither this Note nor any terms hereof may be changed, waived, discharged or terminated unless such change, waiver, discharge or termination is in writing signed by the Company and the Holder of this Note.

5.4    **Assignability.** This Note shall be binding upon the Company and its successors, and shall inure to the benefit of and be binding upon the Holder and its successors and permitted assigns. The Company shall not assign its rights or obligations under this Note without the prior written consent of the Holder.

5.5    **Certain Expenses.** The Company shall pay on demand all expenses incurred by the Holder, including reasonable attorneys' fees and expenses, as a consequence of, or in connection with (x) any amendment or waiver of this Note or any other Transaction Document, (y) any default or breach of any of the Company's obligations set forth in the Transaction Documents and (z) the enforcement or restructuring of any right of, including the collection of any payments due, the Holder under the Transaction Documents, including any action or proceeding relating to such enforcement or any order, injunction or other process seeking to restrain the Company from paying any amount due the Holder.

5.6    **Governing Law, Forum Selection, Jurisdiction.** This Note shall be governed by and construed in accordance with the laws of the State of New York, without regard or giving effect to the principles of conflicts of law thereof.

5.7    **Transfer of Note and Noteholder Payment Amount.** This Note has not been and is not being registered under the provisions of the 1933 Act or any securities laws and this Note may not be transferred unless the Holder shall have delivered to the Company an opinion of counsel, reasonably satisfactory in form, scope and substance to the Company, to the effect that this Note may be sold or transferred without registration under the 1933 Act or otherwise.

5.8    **Enforceable Obligation.** The Company represents and warrants that this Note is an enforceable obligation of the Company which is not subject to any offset, reduction, counterclaim or disallowance of any sort.

5.9    **Note Register; Replacement of Note.** The Company shall maintain a register showing the name, address and telephone line facsimile numbers of the Holder. The Company shall also maintain a facility for the registration of transfers of this Note and at which this Note may be surrendered for split up into instruments of smaller denominations or for combination into instruments of larger denominations. Upon receipt by the Company of evidence reasonably satisfactory to it of the ownership of and the loss, theft, destruction or mutilation of this Note and (a) in the case of loss, theft or destruction, of indemnity from the Holder reasonably satisfactory in form to the Company (and without the requirement to post any

-12-

bond or other security) or (b) in the case of mutilation, upon surrender and cancellation of this Note, the Company will execute and deliver to the Holder a new Note of like tenor without charge to the Holder.

      5.10  **Waiver of Presentment.**  The Company hereby waives presentment for payment, demand, protest and notice of any kind.

*[Remainder of Page Intentionally Left Blank]*

-13-



**IN WITNESS WHEREOF**, the Company has caused this Note to be signed in its name by its duly authorized officer as of the day and in the year first above written.

RDX TECHNOLOGIES CORPORATION

By: _____
    Dennis M. Danzik
    CEO

RIDGELINE ENERGY SERVICES (USA) INC.

By: _____
    Dennis M. Danzik
    CEO

SFS REAL ESTATE & RECOVERY, LLC
By: RDX Technologies USA Corporation, its sole member

By: _____
    Dennis M. Danzik
    Manager

RDX ENERGY GROUP, LLC
By: RDX Technologies USA Corporation, its sole member

By: _____
    Dennis M. Danzik
    Manager

RDX WATER GROUP, LLC
By: RDX Technologies USA Corporation, its sole member

By: _____
    Dennis M. Danzik
    Manager

RDX APPLIED TECHNOLOGIES I, LLC
By: RDX Technologies USA Corporation, its sole member

By: _____
    Dennis M. Danzik
    Manager

-14-

## CONFIRMATION OF GUARANTY
### (Dennis M. Danzik)

This Confirmation (the "Confirmation") to the Guaranty, dated May 7, 2014, (the "Guaranty") by Dennis M. Danzik (the "Guarantor") is effective as of October 3rd, 2014. Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the New Note Purchase Agreement (as defined below).

WHEREAS, pursuant to a Note Purchase Agreement, dated as of May 7, 2014, as amended, the Initial Borrowers issued to the Sigma Opportunity Fund II, LLC ("Sigma"), a Senior Secured Note ("Note #1"), in the original principal amount of $3,280,000;

WHEREAS, the Guaranty was issued in consideration of the loan made by Sigma to or for the account of the Initial Borrowers;

WHEREAS, pursuant to a Note Purchase Agreement, dated October 3rd, 2014 ("New Note Purchase Agreement"), RDX Technologies Corporation and its subsidiaries, Ridgeline Energy Services (USA) Inc., SFS Real Estate & Recovery, LLC, RDX Energy Group, LLC, RDX Water Group, LLC, and RDX Applied Technologies I, LLC (collectively the "Company") is issuing an Amended and Restated Senior Secured Convertible Note ("New Note") to supersede and replace Note #1;

WHEREAS, in connection with the issuance of the New Note, the Company is granting to each of Sigma and Sigma Capital Advisors, LLC ("SCA") a Put Option with respect to certain shares of Common Stock;

WHEREAS, in connection with the issuance of the New Note and the grant of the Put Option, the undersigned has agreed to enter into this Confirmation to the Guaranty to confirm the guaranty to Sigma arising under, out of, or in connection with the New Note Purchase Agreement, the Security Agreement, as amended, the Advisory Services Agreement, as amended (collectively, as amended, modified, restated or supplemented from time to time, the "Loan Agreements") and to guaranty to SCA the Company's obligations to fund the Put Option.

NOW, THEREFORE, in consideration of the premises, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Dennis M. Danzik agrees as follows:

1.   Confirmation.   The Guarantor confirms his guaranty of the Obligations (as defined in the Guaranty), including but not limited to the Put Option, to Sigma, arising under, out of, or in connection with the Loan Agreements.

2.   Additional Guaranty.   The Guarantor unconditionally guaranties to SCA the prompt payment and performance when due (whether acceleration or otherwise) of all present and future obligations and liabilities of any and all kinds of the Company to SCA and of all instruments of any nature evidencing or relating to any such obligations and liabilities upon which the Company is or may become liable to SCA, whether incurred by the Company as maker, endorser, drawer, acceptor, guarantor, accommodation party or otherwise, and whether

due or to become due, secured or unsecured, absolute or contingent, joint or several, and however or whenever acquired by SCA, arising under, out of, or in connection with the Loan Agreements or any documents, instruments or agreements relating to or executed in connection with the Loan Agreements or any documents, instruments or agreements referred to therein (together with the Loan Agreements, as each may be amended, modified, restated or supplemented from time to time, the "Loan Documents") (all of which are herein collectively referred to as the " Obligations to SCA"), including but not limited to the Put Option, and irrespective of the genuineness, validity, regularity or enforceability of such Obligations to SCA, or of any instrument evidencing any of the Obligations to SCA or of any collateral therefor or of the existence or extent of such collateral, and irrespective of the allowability, allowance or disallowance of any or all of the Obligations to SCA in any case commenced by or against the Company under Title 11, United States Code or otherwise, including, without limitation, obligations or indebtedness of the Company for post-petition interest, fees, costs and charges that would have accrued or been added to the Obligations to SCA but for the commencement of such case. The Guarantor unconditionally confirms all the provisions of the Guaranty with respect to SCA as if SCA was an original party thereto.

3.      Financial Status of Guarantor Bring down.

As of the date of this Guaranty, the fair saleable value of Guarantor's assets exceeds his liabilities, Guarantor is meeting current liabilities as they mature, and the financial statements of Guarantor furnished Sigma are true and correct and include in the footnotes thereto all contingent liabilities of Guarantor and since the date of said financial statements there has been no material adverse change in the condition of Guarantor. Guarantor shall immediately give Sigma written notice of any material adverse change in his financial condition, including but not limited to litigation commenced, defaults claimed under its indebtedness for borrowed money or bankruptcy proceedings commenced against Guarantor, by Guarantor or by any other person or entity. Guarantor shall, upon request by Sigma no more than once each calendar quarter, furnish his current financial statements to Sigma and permit Sigma or its representatives to inspect his financial records and properties and make extracts therefrom in order to evaluate the financial condition of Guarantor. Guarantor shall provide written notice to Sigma of any material change in Guarantor's financial condition within three (3) business days of such change. Guarantor is fully aware of the financial condition of the Company.

The foregoing representations and warranties shall be deemed to have been made by the undersigned on the date of each borrowing by the Company under the Loan Agreements on and as of such date of such borrowing as though made hereunder on and as of such date.

4.      Miscellaneous.   Except as specifically confirmed and amended hereby, the Guaranty shall remain in full force and effect as issued. All references to the Guaranty in any of the Transaction Documents shall be deemed to refer to the Guaranty as confirmed by this Confirmation and the same may be further amended, supplemented or modified in accordance with its terms by the parties from time to time. This Confirmation shall be governed by and construed in accordance with the laws of the State of New York. This Confirmation may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.



IN WITNESS WHEREOF, this Confirmation has been executed by the undersigned this 3rd day of October, 2014.

Dennis M. Danzik

1334 Sunset Blvd South
Cody, Wyoming 82414
480-353-1779

The undersigned acknowledges and agrees to the terms set forth in this Confirmation as they relate to the residential property jointly owned with Guarantor, as of this 3rd day of October, 2014:

Elizabeth J. Danzik - Spouse

STATE OF _Arizona_ )
                    ): ss.:
COUNTY OF _Maricopa_ )

On the _3_ day of October, 2014, before me personally came Dennis M. Danzik to me known, who being by me duly sworn, did depose and say that he resides at _1334 Sunset Bluffs. Cody, NY 82414_ that he has read the foregoing instrument and is fully familiar with the contents thereof; that he signed his name thereto of his own free will and volition.

_Monica Garcia_
Notary Public

MONICA GARCIA
Notary Public - State of Arizona
MARICOPA COUNTY
My Commission Expires Jan. 15, 2017

Confirmation of Personal Guaranty

## U.S. Bankruptcy Court
## District of Arizona (Phoenix)
## Bankruptcy Petition #: 2:15-bk-15859-PS

*Date filed:* 12/17/2015
*341 meeting:* 01/19/2016
*Deadline for filing claims:* 04/22/2016

*Assigned to:* Judge Paul Sala
Chapter 11
Voluntary
Asset

*Debtor*                                       represented by **RONALD J. ELLETT**
**RDX TECHNOLOGIES CORPORATION**               ELLETT LAW OFFICES, P.C.
14747 NORTH NORTHSIGHT BLVD                     2999 North 44th Street
SCOTTSDALE, AZ 85260                            Suite 330
MARICOPA-AZ                                     PHOENIX, AZ 85018
Tax ID / EIN: 47-2017598                        602-235-9510
*fka* **RIDGELINE ENERGY SERVICES**             Fax : 602-235-9098
**INC**                                         Email: rjellett@ellettlaw.phxcoxmail.com

*U.S. Trustee*                                 represented by **ELIZABETH C. AMOROSI**
**U.S. TRUSTEE**                                OFFICE OF THE U.S. TRUSTEE
OFFICE OF THE U.S. TRUSTEE                       230 N. 1ST AVENUE, SUITE 204
230 NORTH FIRST AVENUE                          PHOENIX, AZ 85003
SUITE 204                                       602-682-2600
PHOENIX, AZ 85003                               Fax : 602-514-7270

| Filing Date | # | Docket Text |
|---|---|---|
| 12/17/2015 | <u>1</u> (4 pgs) **EXHIBIT** Sigma RAS Exhibit B | Chapter 11 Voluntary Petition for Non-Individual, Schedules and Statements (except for those listed below). Failure to timely upload the list of creditors, may result in dismissal of the case without further notice. Electronic Filing Declaration due 01/7/2016, Master Mailing due 12/24/2015, Schedules A/B-J due 12/31/2015. Statement of Financial Affairs due 12/31/2015, Attorney Disclosure Statement due 12/31/2015, Chapter 11 Statement of Current Monthly Income due by 12/31/2015, Payment Advices Declaration Required by 11 USC Section 521(a)(1)(B)(iv) due by 12/31/2015, filed by RONALD J. ELLETT of ELLETT LAW OFFICES, P.C. on behalf of RDX TECHNOLOGIES CORPORATION (ELLETT, RONALD) (Entered: 12/17/2015) |
| 12/17/2015 | <u>2</u> (9 pgs; 3 docs) | Application to Employ *and Appoint Attorney and Ellett Law Offices, P.C.* filed by RONALD J. |

| | | |
|---|---|---|
| | | ELLETT of ELLETT LAW OFFICES, P.C. on behalf of RDX TECHNOLOGIES CORPORATION (Attachments: # 1 Attorney Client Contract # 2 Affidavit of Attorney). (ELLETT, RONALD) (Entered: 12/17/2015) |
| 12/17/2015 | 3 | Meeting of Creditors scheduled for 01/19/2016 at 11:30 AM at US Trustee Meeting Room, 230 N. First Avenue, Suite 102, Phoenix, AZ (341-PHX). (Admin, ) (Entered: 12/17/2015) |
| 12/18/2015 | | Receipt of Voluntary Petition (Chapter 11)(2:15-bk-15859) [other,volp11] (1717.00) Filing Fee. Receipt number 26337443. Fee amount 1717.00. (U.S. Treasury) (Entered: 12/18/2015) |
| 12/18/2015 | 4 (3 pgs; 2 docs) | Deficiency Notice to Debtor and Attorney for Debtor That All Required Documents Were Not Filed. (Taylor, Erika) (Entered: 12/18/2015) |
| 12/18/2015 | 5 (3 pgs; 2 docs) | Notice of Lodging Proposed Order filed by RONALD J. ELLETT of ELLETT LAW OFFICES, P.C. on behalf of RDX TECHNOLOGIES CORPORATION (Attachments: # 1 Order Authorizing Employment of Ronald J. Ellett and Ellett Law Offices, P.C. as Attorney for Debtor). (ELLETT, RONALD) (Entered: 12/18/2015) |
| 12/18/2015 | 6 (3 pgs) | BNC Certificate of Notice (related document(s)4 Deficiency Notice to Debtor (Missing Documents Form)) (Admin.) (Entered: 12/20/2015) |
| 12/21/2015 | 7 (2 pgs) | Notice of Appearance *and Request for Notice* filed by ELIZABETH C. AMOROSI of OFFICE OF THE U.S. TRUSTEE on behalf of U.S. TRUSTEE. (AMOROSI, ELIZABETH) (Entered: 12/21/2015) |
| 12/23/2015 | 8 (2 pgs) | Notice of Appearance *and Request for Notice* filed by BRADLEY A COSMAN of PERKINS COIE LLP on behalf of Resource Recovery Corporation, CWT Canada II Limited Partnership.(COSMAN, BRADLEY) (Entered: 12/23/2015) |
| 12/23/2015 | 9 (2 pgs) | Notice of Appearance *and Request for Notice* filed by JORDAN A KROOP of PERKINS COIE LLP on behalf of CWT Canada II Limited Partnership, Resource Recovery Corporation.(KROOP, JORDAN) (Entered: 12/23/2015) |

| | | |
|---|---|---|
| 12/23/2015 | [10](#)<br>(2 pgs; 2 docs) | **ORDER** Setting Chapter 11 Status Conference signed on 12/23/2015 Status Hearing set for 1/21/2016 at 10:00 AM at 230 N. First Ave., 6th Floor, Courtroom 601, Phoenix, AZ (PS) . (Beller, Luann) (Entered: 12/23/2015) |
| 12/23/2015 | [12](#)<br>(2 pgs) | BNC Certificate of Notice (related document(s)[10](#) Order Setting Chapter 11 Status Conference (MCW/PS Form)) (Admin.) (Entered: 12/25/2015) |
| 12/24/2015 | [11](#)<br>(14 pgs) | Master Mailing List filed by RONALD J. ELLETT of ELLETT LAW OFFICES, P.C. on behalf of RDX TECHNOLOGIES CORPORATION. (ELLETT, RONALD) (Entered: 12/24/2015) |
| 12/28/2015 | [13](#)<br>(5 pgs; 2 docs) | Chapter 11 Corp/Part Notice of Meeting of Creditors. 341(a) meeting to be held on 1/19/2016 at 11:30 AM at US Trustee Meeting Room, 230 N. First Avenue, Suite 102, Phoenix, AZ (341-PHX) (McCormick, Janel) (Entered: 12/28/2015) |
| 12/28/2015 | [17](#)<br>(5 pgs) | BNC Certificate of Notice - Notice of Meeting of Creditors (related document(s)[13](#) BNC Form Request--341 Notice--Chapter 11 Corp/Part) (Admin.) (Entered: 12/30/2015) |
| 12/29/2015 | [14](#)<br>(4 pgs) | List of Twenty Largest Unsecured Creditors filed by RONALD J. ELLETT of ELLETT LAW OFFICES, P.C. on behalf of RDX TECHNOLOGIES CORPORATION. (ELLETT, RONALD) (Entered: 12/29/2015) |
| 12/30/2015 | [15](#)<br>(1 pg) | Motion to Extend Time to File Schedules and Statements filed by RONALD J. ELLETT of ELLETT LAW OFFICES, P.C. on behalf of RDX TECHNOLOGIES CORPORATION. (ELLETT, RONALD) (Entered: 12/30/2015) |
| 12/30/2015 | [16](#)<br>(2 pgs; 2 docs) | Notice of Lodging Proposed Order *Extending Deadline to File Schedules and Statement of Financial Affairs* filed by RONALD J. ELLETT of ELLETT LAW OFFICES, P.C. on behalf of RDX TECHNOLOGIES CORPORATION (related document(s)[15](#) Motion to Extend Time to File Schedules and Statements) (Attachments: # [1](#) Order Extending Deadline to File Schedules and Statement |

| | | |
|---|---|---|
| | | of Financial Affairs).(ELLETT, RONALD) (Entered: 12/30/2015) |
| 01/04/2016 | 18 (3 pgs) | **ORDER** Granting Application to Employ (Related Doc # 2) signed on 1/4/2016 . (Taylor, Erika) (Entered: 01/04/2016) |
| 01/06/2016 | 19 (4 pgs) | Application for Limited Admission *of Jeffrey M. Eilender* filed by BRADLEY A COSMAN of PERKINS COIE LLP on behalf of CWT Canada II Limited Partnership, Resource Recovery Corporation. (COSMAN, BRADLEY) (Entered: 01/06/2016) |
| 01/06/2016 | 20 (4 pgs) | Application for Limited Admission *of Vitali S. Rosenfeld* filed by BRADLEY A COSMAN of PERKINS COIE LLP on behalf of CWT Canada II Limited Partnership, Resource Recovery Corporation. (COSMAN, BRADLEY) (Entered: 01/06/2016) |
| 01/06/2016 | 21 (4 pgs) | Application for Limited Admission *of Bradley J. Nash* filed by BRADLEY A COSMAN of PERKINS COIE LLP on behalf of CWT Canada II Limited Partnership, Resource Recovery Corporation. (COSMAN, BRADLEY) (Entered: 01/06/2016) |
| 01/06/2016 | 22 (6 pgs) | Notice of Lodging Proposed Order *for Limited Admission* filed by BRADLEY A COSMAN of PERKINS COIE LLP on behalf of CWT Canada II Limited Partnership, Resource Recovery Corporation (related document(s)19 Application for Limited Admission, 20 Application for Limited Admission, 21 Application for Limited Admission).(COSMAN, BRADLEY) (Entered: 01/06/2016) |
| 01/07/2016 | 23 (1 pg) | **ORDER** Granting Application for Limited Admission (Related Doc # 19) signed on 1/7/2016 . (Taylor, Erika) (Entered: 01/07/2016) |
| 01/07/2016 | 24 (1 pg) | **ORDER** Granting Application for Limited Admission (Related Doc # 20) signed on 1/7/2016 . (Taylor, Erika) (Entered: 01/07/2016) |
| 01/07/2016 | 25 (1 pg) | **ORDER** Granting Application for Limited Admission (Related Doc # 21) signed on 1/7/2016 . (Taylor, Erika) (Entered: 01/07/2016) |

| 01/08/2016 | 26<br>(54 pgs; 2 docs) | Schedules for Non-Individual filed by RONALD J. ELLETT of ELLETT LAW OFFICES, P.C. on behalf of RDX TECHNOLOGIES CORPORATION. Electronic Filing Declaration due by 01/15/2016, (Attachments: # 1 Attorney Client Contract)(ELLETT, RONALD) (Entered: 01/08/2016) |
| 01/08/2016 | 27<br>(10 pgs) | Statement of Financial Affairs for Non-Individual filed by RONALD J. ELLETT of ELLETT LAW OFFICES, P.C. on behalf of RDX TECHNOLOGIES CORPORATION. Electronic Filing Declaration due by 01/15/2016, (ELLETT, RONALD) (Entered: 01/08/2016) |
| 01/08/2016 | 28<br>(3 pgs) | List of Equity Security Holders filed by RONALD J. ELLETT of ELLETT LAW OFFICES, P.C. on behalf of RDX TECHNOLOGIES CORPORATION. (ELLETT, RONALD) (Entered: 01/08/2016) |
| 01/08/2016 | 29<br>(1 pg) | Notice of Filing *Corporate Ownership Statement* filed by RONALD J. ELLETT of ELLETT LAW OFFICES, P.C. on behalf of RDX TECHNOLOGIES CORPORATION.(ELLETT, RONALD) (Entered: 01/08/2016) |
| 01/08/2016 | 30<br>(4 pgs) | Amendment to Petition *to Correct Physical Address* filed by RONALD J. ELLETT of ELLETT LAW OFFICES, P.C. on behalf of RDX TECHNOLOGIES CORPORATION. (ELLETT, RONALD) (Entered: 01/08/2016) |
| 01/11/2016 | 31<br>(2 pgs; 2 docs) | **ORDER** Granting Motion to Extend Time to File Schedules and Statements (Related Doc # 15) signed on 1/11/2016 Schedules/Statements due by 1/8/2016, . (Taylor, Erika) (Entered: 01/11/2016) |
| 01/11/2016 | 34<br>(2 pgs) | BNC Certificate of Notice - PDF Document (related document(s)31 Order on Motion to Extend Time to File Schedules and Statements) (Admin.) (Entered: 01/13/2016) |
| 01/12/2016 | 32<br>(2 pgs) | Notice of Appearance filed by Jasmin Yang of SNELL & WILMER L.L.P. on behalf of Sigma Opportunity Fund II, LLC.(Yang, Jasmin) (Entered: 01/12/2016) |

| 01/12/2016 | 33 (7 pgs; 2 docs) | Notice of Nonconsent to Use of Cash Collateral filed by Jasmin Yang of SNELL & WILMER L.L.P. on behalf of Sigma Opportunity Fund II, LLC (Attachments: # 1 Exhibit A).(Yang, Jasmin) (Entered: 01/12/2016) |
| 01/20/2016 | 35 | ENTERED IN ERROR Deficiency Notice That All Required New Official Forms Were Not Filed. (Taylor, Erika) Modified on 1/20/2016 (Taylor, Erika). (Entered: 01/20/2016) |
| 01/20/2016 | 36 (3 pgs; 2 docs) | Deficiency Notice That All Required New Official Forms Were Not Filed. (Taylor, Erika) (Entered: 01/20/2016) |
| 01/20/2016 | 37 (3 pgs; 2 docs) | Deficiency Notice That All Required New Official Forms Were Not Filed. (Taylor, Erika) (Entered: 01/20/2016) |
| 01/20/2016 | 38 (1 pg) | Minutes of 341 Meeting *Held & Concluded on: 1/19/16 @ 11:30 a.m.* filed by ELIZABETH C. AMOROSI of OFFICE OF THE U.S. TRUSTEE on behalf of U.S. TRUSTEE.(AMOROSI, ELIZABETH) (Entered: 01/20/2016) |
| 01/20/2016 | 43 (3 pgs) | BNC Certificate of Notice (related document(s)36 Deficiency Notice (New Official Forms)) (Admin.) (Entered: 01/22/2016) |
| 01/20/2016 | 44 (3 pgs) | BNC Certificate of Notice (related document(s)37 Deficiency Notice (New Official Forms)) (Admin.) (Entered: 01/22/2016) |
| 01/21/2016 | 39 (3 pgs; 2 docs) | Deficiency Notice That All Required New Official Forms Were Not Filed. (Stawarski, Joann) (Entered: 01/21/2016) |
| 01/21/2016 | 40 (3 pgs; 2 docs) | Deficiency Notice That All Required New Official Forms Were Not Filed. (Stawarski, Joann) (Entered: 01/21/2016) |
| 01/21/2016 | 41 (1 pg) | ◁))) PDF with attached Audio File. Court Date & Time [ 01/21/2016 10:00 AM ]. File Size [ 5,998 KB ]. Run Time [ 00:12:47 ]. (vCal Hearing ID (1324703)).(Purvis, Andamo). (Entered: 01/22/2016) |
| 01/21/2016 | | |

| | | |
|---|---|---|
| | 45<br>(3 pgs) | BNC Certificate of Notice (related document(s)39 Deficiency Notice (New Official Forms)) (Admin.) (Entered: 01/23/2016) |
| 01/21/2016 | 46<br>(3 pgs) | BNC Certificate of Notice (related document(s)40 Deficiency Notice (New Official Forms)) (Admin.) (Entered: 01/23/2016) |
| 01/21/2016 | 48<br>(1 pg) | **Minutes of Hearing held on: 01/21/2016**<br>**Subject:** CHAPTER 11 STATUS CONFERENCE. (vCal Hearing ID (1324703)). (related document(s) 10) (Beller, Luann) (Entered: 01/25/2016) |
| 01/22/2016 | 42<br>(4 pgs; 2 docs) | Deficiency Notice to Attorney RE: Non-Compliance With Local Rule 1007-1(c) for No Declaration of Electronic Filing. (Taylor, Erika) (Entered: 01/22/2016) |
| 01/22/2016 | 47<br>(4 pgs) | BNC Certificate of Notice (related document(s)42 Deficiency/Warning Notice to Attorney for No Declaration of Electronic Filing) (Admin.) (Entered: 01/24/2016) |
| 01/28/2016 | 49<br>(1 pg) | Debtor Declaration Re: Electronic Filing (Taylor, Erika) (Entered: 01/29/2016) |
| 02/01/2016 | 50<br>(2 pgs; 2 docs) | Notice of Lodging Proposed Order *Granting Motion to Set Bar Date for Filing Proofs of Claim* filed by RONALD J. ELLETT of ELLETT LAW OFFICES, P.C. on behalf of RDX TECHNOLOGIES CORPORATION (Attachments: # 1 Order Granting Motion to Set Bar Date for Filing Proofs of Claim). (ELLETT, RONALD) (Entered: 02/01/2016) |
| 02/05/2016 | 51<br>(2 pgs) | **ORDER** Setting Last Day to File Proofs of Claims signed on 2/5/2016 (related document(s)48 Minute Entry) Proof of Claims due by 4/22/2016, . (Taylor, Erika) (Entered: 02/08/2016) |
| 02/08/2016 | 52<br>(9 pgs; 3 docs) | Certificate of Mailing filed by RONALD J. ELLETT of ELLETT LAW OFFICES, P.C. on behalf of RDX TECHNOLOGIES CORPORATION. (related document(s)51 Order Setting Last Day to File Claims) (Attachments: # 1 Order Setting Bar Date for Filing Proofs of Claim # 2 Master Mailing Matrix)(ELLETT, RONALD) (Entered: 02/08/2016) |
| 02/08/2016 | | |

| | | |
|---|---|---|
| | [53](#) <br> (13 pgs; 2 docs) | Application for Attorney or Other Professional Compensation filed by RONALD J. ELLETT of ELLETT LAW OFFICES, P.C. on behalf of RDX TECHNOLOGIES CORPORATION (Attachments: # [1](#) Invoice). (ELLETT, RONALD) (Entered: 02/08/2016) |
| 02/08/2016 | [54](#) <br> (7 pgs; 2 docs) | Notice of Filing *First Application for Payment of Debtor's Counsel's Fees* filed by RONALD J. ELLETT of ELLETT LAW OFFICES, P.C. on behalf of RDX TECHNOLOGIES CORPORATION (related document(s)[53](#) Application for Attorney or Other Professional Compensation) (Attachments: # [1](#) First Application for Payment of Debtor's Counsel's Fees).(ELLETT, RONALD) (Entered: 02/08/2016) |
| 02/08/2016 | [55](#) <br> (14 pgs; 4 docs) | Certificate of Mailing filed by RONALD J. ELLETT of ELLETT LAW OFFICES, P.C. on behalf of RDX TECHNOLOGIES CORPORATION. (related document(s)[53](#) Application for Attorney or Other Professional Compensation) (Attachments: # [1](#) Notice of Filing First Application for Payment of Debtor's Counsel's Fees # [2](#) First Application for Payment of Debtor's Counsel's Fees # [3](#) Creditor Mailing Matrix)(ELLETT, RONALD) (Entered: 02/08/2016) |
| 02/19/2016 | [56](#) <br> (14 pgs; 2 docs) | Motion for Relief from Stay (176.00 fee) filed by BLAKE D GUNN on behalf of Town Of Deaver, Wyoming (Attachments: # [1](#) Exhibit "A" Lease). (GUNN, BLAKE) (Entered: 02/19/2016) |
| 02/19/2016 | [57](#) <br> (2 pgs) | Notice of Bar Date filed by BLAKE D GUNN on behalf of Town Of Deaver, Wyoming (related document(s)[56](#) Motion for Relief from Stay (176.00 fee)) Objections/Responses due by 3/9/2016,. (GUNN, BLAKE) (Entered: 02/19/2016) |
| 02/19/2016 | [58](#) <br> (2 pgs) | Certificate of Service filed by BLAKE D GUNN on behalf of Town Of Deaver, Wyoming. (related document(s)[56](#) Motion for Relief from Stay (176.00 fee), [57](#) Notice of Bar Date) (GUNN, BLAKE) (Entered: 02/19/2016) |

FILED: NEW YORK COUNTY CLERK 01/12/2016 11:14 AM
NYSCEF DOC. NO. 44

INDEX NO. 652883/2015
RECEIVED NYSCEF: 01/12/2016

At an IAS, Part 48 of the Supreme
Court of the State of New York held in
and for the County of New York, at the
Courthouse thereof located at 60 Centre
Street, New York, New York on the 12th
day of January, 2016.

JEFFREY K. OING
J.S.C.

PRESENT: HON. JEFFREY K. OING
Justice of the Supreme Court

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------X
SIGMA OPPORTUNITY FUND II, LLC,

                                    Plaintiff,

        -against-

DENNIS M. DANZIK,

                                    Defendant.
----------------------------------------------------------------X

**ORDER AND JUDGMENT**

Index No. 652883/2015

Judge Assigned:
Hon. Justice Jeffrey K. Oing

### ORDER AND JUDGMENT AS TO DEFENDANT,
### DENNIS M. DANZIK

The Plaintiff, SIGMA OPPORTUNITY FUND II, LLC (referred to herein as "Sigma" or

"Plaintiff"), having filed its Summons and Complaint in this action on or about August 19, 2015;

and Defendant, DENNIS M. DANZIK (referred to herein as "Danzik" or "Defendant"), having

been duly served with the Summons and Complaint on August 20, 2015; and Defendant having

appeared in this action and having filed his Answer on or about September 8, 2015 denying the

material allegations therein; and Plaintiff having filed its Notice of Motion for Summary

Judgment with supporting affirmation and exhibits on or about October 16, 2015 (the "Summary

Judgment Motion"), seeking a money judgment against Danzik in the amount of $2,340,800.00,

plus interest, costs and attorneys' fees representing amounts due from Defendant, Danzik, to



EXHIBIT
Sigma RAS
Exhibit C

Plaintiff, Sigma, under ~~that certain personal, absolute and unconditional~~ *a* personal guaranty ~~signed~~

~~by Danzik,~~ dated May 7, 2014, and thereafter reconfirmed by Danzik on October 3, 2014

pursuant to a Confirmation of Guaranty (collectively the "Personal Guarantee"), ~~which~~

~~guaranteed the payment and performance of an Amended and Restated Note, dated October 3,~~

~~2014,~~ in the principal amount of $2,340,800.00, plus accrued interest thereon, as referenced in

the Complaint and in the Summary Judgment Motion; and Danzik having failed to interpose any

*of appeared in opposition to said motion*

opposition to the Summary Judgment Motion; and such Summary Judgment Motion having been

submitted to the Court for decision on December 4, 2015; and the Court having issued its

Decision ~~and Order~~ dated and entered December 23, 2015 granting Plaintiff's Summary

*on default*

Judgment Motion in its entirety against Danzik and directing Plaintiff to settle order upon notice.

   **NOW,** upon motion of Plaintiff's attorneys, Moomjian, Waite & Coleman, LLP, it is

hereby

   **ORDERED** ~~and ADJUGED,~~ that Plaintiff's Summary Judgment Motion is granted ~~in~~

*on default*

~~its entirety in favor of Plaintiff, Sigma, and against Defendant, Danzik;~~ and it is further

*that the Clerk is directed to enter*

   **ORDERED** ~~and ADJUDGED,~~ that Judgment is ~~rendered~~ in favor of Plaintiff, SIGMA

OPPORTUNITY FUND II, LLC, whose address is 800 Third Avenue, New York, New York

10022, and against Defendant, DENNIS M. DANZIK, whose address is 1334 Sunset Blvd.

South, Cody, Wyoming  82414, in the sum of $2,340,800.00, ~~the amount claimed in the~~

~~Complaint and sought and awarded by the Court in the Summary Judgment Motion, and that~~

~~Plaintiff, SIGMA OPPORTUNITY FUND II, LLC, recover against Defendant, DENNIS M.~~

~~DANZIK, the sum of $2,340,800.00,~~ plus interest to accrue from the date of Judgment at the

*as calculated by the Clerk.*

statutory rate of nine (9%) percent, ~~and that Plaintiff have execution therefor; and~~

Dated:

Enter:

*I DO NOT POST*

J.S.C.   **JEFFREY K. OING**
J.S.C.

Debtor 1   **DENNIS MEYER DANZIK**

Case number (if know)   **16-20002**

| 4.10 | **SIGMA OPPORTUNITY FUND** | Last 4 digits of account number | _____ | **$2,134,000.00** |

Nonpriority Creditor's Name

**800 3RD AVENUE, 17TH FLOOR**
**NEW YORK, NY 10022**

When was the debt incurred?   _____

Number Street City State Zip Code

**Who incurred the debt? Check one.**

As of the date you file, the claim is: Check all that apply

- ☐ Contingent
- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Unliquidated
- ☐ Debtor 1 and Debtor 2 only
- ☐ Disputed
- ☐ At least one of the debtors and another

**Type of NONPRIORITY unsecured claim:**

- ☐ Check if this claim is for a community debt
- ☐ Student loans

**Is the claim subject to offset?**

- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ■ No
- ☐ Yes
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify   **GUARANTOR**

---

**Part 3:** **List Others to Be Notified About a Debt That You Already Listed**

5. Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.

Name and Address
**INTERNAL REVENUE SERVICE**
**1999 BROADWAY M/S 5012DEN**
**DENVER, CO 80202-3025**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **2.1** of (Check one):

- ■ Part 1: Creditors with Priority Unsecured Claims
- ☐ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number      **1786**

Name and Address
**UNITED STATES ATTORNEY**
**950 PENNSYLVANIA AVE NW**
**WASHINGTON, DC 20530**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **2.1** of (Check one):

- ■ Part 1: Creditors with Priority Unsecured Claims
- ☐ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

Name and Address
**UNITED STATES ATTORNEY**
**DISTRICT OF WYOMING**
**P.O. BOX 668**
**CHEYENNE, WY 82003**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **2.1** of (Check one):

- ■ Part 1: Creditors with Priority Unsecured Claims
- ☐ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

**Part 4:** **Add the Amounts for Each Type of Unsecured Claim**

6. Total the amounts of certain types of unsecured claims. This information is for statistical reporting purposes only. 28 U.S.C. §159. Add the amounts for each type of unsecured claim.

|  |  |  |  | Total claim |
|---|---|---|---|---|
| | 6a. | Domestic support obligations | 6a. | $ 0.00 |
| **Total claims from Part 1** | 6b. | Taxes and certain other debts you owe the government | 6b. | $ 960,532.74 |
| | 6c. | Claims for death or personal injury while you were intoxicated | 6c. | $ 0.00 |
| | 6d. | Other. Add all other priority unsecured claims. Write that amount here. | 6d. | $ 0.00 |
| | 6e. | **Total.** Add lines 6a through 6d. | 6e. | $ 960,532.74 |

|  |  |  |  | Total Claim |
|---|---|---|---|---|
| | 6f. | Student loans | 6f. | $ 0.00 |
| **Total claims from Part 2** | 6g. | Obligations arising out of a separation agreement or divorce that you did not report as priority claims | 6g. | $ 0.00 |
| | 6h. | Debts to pension or profit-sharing plans, and other similar debts | 6h. | $ 0.00 |
| | 6i. | Other. Add all other nonpriority unsecured claims. Write that amount here. | 6i. | $ 2,261,069.43 |
| | 6j. | **Total.** Add lines 6f through 6i. | 6j. | $ 2,261,069.43 |

---

Official Form 106 E/F          Schedule E/F: Creditors Who Have Unsecured Claims          Page 5 of 5

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

**EXHIBIT**
Sigma RAS
Exhibit D

| Fill in this information to identify your case: |
|---|

| Debtor 1 | **DENNIS MEYER DANZIK** | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF WYOMING | | |
| Case number | **16-20002** | | |
| (if known) | | | |

☐ Check if this is an amended filing

Official Form 106E/F

## Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on Schedule A/B: Property (Official Form 106A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G). Do not include any creditors with partially secured claims that are listed in Schedule D: Creditors Who Have Claims Secured by Property. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. If you have no information to report in a Part, do not file that Part. On the top of any additional pages, write your name and case number (if known).

### Part 1:  List All of Your PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims against you?**

   ☐ No. Go to Part 2.

   ■ Yes.

2. **List all of your priority unsecured claims.** If a creditor has more than one priority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. If a claim has both priority and nonpriority amounts, list that claim here and show both priority and nonpriority amounts. As much as possible, list the claims in alphabetical order according to the creditor's name. If you have more than two priority unsecured claims, fill out the Continuation Page of Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.

   (For an explanation of each type of claim, see the instructions for this form in the instruction booklet.)

| | | | Total claim | Priority amount | Nonpriority amount |
|---|---|---|---|---|---|
| **2.1** | **INTERNAL REVENUE SERVICE** | Last 4 digits of account number **1786** | **$960,532.7 4** | **$282,567.21** | **$677,965.53** |

| | |
|---|---|
| Priority Creditor's Name | |
| **P.O. BOX 7346** | When was the debt incurred? **2006-2015** |
| **PHILADELPHIA, PA 19101-7346** | |
| Number Street City State Zip Code | As of the date you file, the claim is: Check all that apply |
| **Who incurred the debt?** Check one. | ☐ Contingent |
| ■ Debtor 1 only | ☐ Unliquidated |
| ☐ Debtor 2 only | ☐ Disputed |
| ☐ Debtor 1 and Debtor 2 only | **Type of PRIORITY unsecured claim:** |
| ☐ At least one of the debtors and another | ☐ Domestic support obligations |
| ☐ **Check if this claim is for a community debt** | ■ Taxes and certain other debts you owe the government |
| **Is the claim subject to offset?** | ☐ Claims for death or personal injury while you were intoxicated |
| ■ No | ☐ Other. Specify |
| ☐ Yes | **INCOME TAXES** |

### Part 2:  List All of Your NONPRIORITY Unsecured Claims

3. **Do any creditors have nonpriority unsecured claims against you?**

   ☐ No. You have nothing to report in this part. Submit this form to the court with your other schedules.

   ■ Yes.

4. **List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim.** If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.If you have more than three nonpriority unsecured claims fill out the Continuation Page of Part 2.

Total claim

**EXHIBIT**

Sigma RAS

Exhibit E