KEN McCARTNEY, Bar No. 5-1335
The Law Offices of Ken McCartney, P.C.
Post Office Box 1364
Cheyenne, WY 82003
Tel (307) 635-0555
Email: bnkrpcyrep@aol.com

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| In re: ) | |
|    DENNIS MEYER DANZIK, ) | |
| ) | Case No.   16-20002 |
| ) | CHAPTER 11 |
| Debtor. ) | |

**DEBTOR'S OPPOSITION TO STAY RELIEF AS REQUESTED
BY CWT CANADA II LIMITED PARTNERSHIP
AND RESOURCE RECOVERY CORPORATION**

COMES NOW the Debtor above named and does hereby oppose stay relief as requested by the CWT Parties.   In support thereof be advised as follows:

1. This is the first stay relief application counsel has ever opposed filed by a claimant without a legitimate claim for money from the Debtor requesting relief for the purpose of putting the individual Debtor in debtor's prison to force the escrow of funds over which the claimant has no legitimate interest. It goes without saying that this conduct would seriously adversely affect the reorganization process.

2. It is also the only stay relief action counsel has defended primarily brought by an attorney that represented the Debtor personally in the collection action creditor's counsel wishes to continue litigating.   To suggest insider

information has led to the collector ignoring the contracting party and pursuing stay relief against the Debtor in this case does not take a long leap of imagination.

3. The Debtor is neither funded nor represented by counsel licensed in the State of New York to continue litigation with the CWT Parties.

4. The litigation is unnecessary to the successful reorganization of the Debtor's affairs. It will prejudice the estate if the Debtor suffers the economic burden this litigation represents. Avoiding that cost was a primary motivator for filing for Chapter 11 protection.

5. The application would seem to be requesting that the Chapter 11 process simply not apply to the CWT Parties. This is not a request to be allowed to liquidate a disputed claim and remain stayed as to all collection action which is often allowed concerning complex claims. This is a request that the bankruptcy court simply no longer be involved in the CWT Parties collection action. That prejudices all creditors—see DOC #53 in the case where Sigma Opportunity Fund II, LLC requests stay relief citing as primary grounds, the avoidance of prejudice to its position a judgment and the resulting collection in the CWT Parties' favor.

6. Contrary to the allegations in the motion, the claim of the CWT Parties which is under consideration is not complex and lends itself to simple estimation for voting and allowance in a Chapter 11. The issue of who owns the claim is

probably the most complex concern the Debtor has. RDX and Danzik have asserted the funds being fought over are the property of the Internal Revenue Service and were wrongfully applied for by the CWT Parties.

7. Counsel's suggestion that the New York Supreme Court action is in the eleventh hour may be true only if the action is scheduled for over 100 hours in production. The case has been pending three years, involves an eleven count cross-claim with 182 paragraphs of highly disputed assertion, to which Mr. Danzik and RDX have not yet even filed Answers. The case has concerned emergency motions and temporary orders. There have been no depositions to date. This bankruptcy case will be confirmed literally years before that litigation could possibly wind down.

8. The current hot spot in the New York case is compliance with a turnover to escrow order entered March of 2015 covering federal tax credits received by the Missouri refinery which were applied for based on production while the CWT Parties operated production. Of a total $5.1M credits arguably, $3.4M of the credits were applied for during CWT Parties tenure. This issue, while problematic for Dennis Danzik, since he cannot turnover that which RDX disposed of in February of 2014, over a year before the turnover order, is not dispositive of the litigation by any means.

9. This court need go no further than the "Unit Purchase Agreement" which controlled the sale of the entity holding the refinery to RDX to understand the

Document      Page 4 of 8

Case 16-20002   Doc 61   Filed 03/03/16   Entered 03/03/16 15:49:01   Desc Main
Document      Page 4 of 8

current New York litigation and its probable outcome:

A. A copy of that agreement is attached as Exhibit A hereto with Exhibit A.1 being its only amendment.

B. On page 10, paragraph 2.3 "Tax Credits One hundred percent (100%) of all amounts received by the Partnership as the result of the reinstatement of any Federal or state tax credit relating to the period prior to and including December 21, 2012 shall be allocated and distributed to RRC and CWT Canada as set forth on Schedule 2.3 to be delivered at Closing." At least as far as page 10, the movant had a claim for roughly $3.4M of tax credits.

C. BUT, in October of 2013 it became really clear that this refinery never produced qualified bio fuel to legitimately earn tax credits of any kind. Employees were fabricating reports and the facility has never been capable of producing a qualified product.

D. RDX settled the original New York case which was brought by Gem Holdings and was completely out of that lawsuit. Three weeks after RDX commenced Canadian litigation against both sellers under the attached agreement alleging the refinery to be a complete fraud, naming many of the professionals who aided the sellers in pretending to manufacture a quality bio diesel, the current cross claimants filed the eleven count cross claim.

E. On page 28 of the Sales Contract at paragraph 11.7 "Right of Setoff Upon notice to Sellers specifying in reasonable detail the basis therefore, Buyer may setoff any amount to which it may be entitled under Article XI. Pursuant to a judgment against Sellers, against amounts otherwise payable under the promissory notes. Neither the exercise of nor the failure to exercise such right of setoff will constitute an election of remedies or limit Buyer in any manner in the enforcement of any other remedies may be available to it. Buyer may also suspend any amounts otherwise payable under the promissory note pending the resolution of any dispute relating to

current New York litigation and its probable outcome:

A. A copy of that agreement is attached as Exhibit A hereto with Exhibit A.1 being its only amendment.

B. On page 10, paragraph 2.3 "Tax Credits One hundred percent (100%) of all amounts received by the Partnership as the result of the reinstatement of any Federal or state tax credit relating to the period prior to and including December 21, 2012 shall be allocated and distributed to RRC and CWT Canada as set forth on Schedule 2.3 to be delivered at Closing." At least as far as page 10, the movant had a claim for roughly $3.4M of tax credits.

C. BUT, in October of 2013 it became really clear that this refinery never produced qualified bio fuel to legitimately earn tax credits of any kind. Employees were fabricating reports and the facility has never been capable of producing a qualified product.

D. RDX settled the original New York case which was brought by Gem Holdings and was completely out of that lawsuit. Three weeks after RDX commenced Canadian litigation against both sellers under the attached agreement alleging the refinery to be a complete fraud, naming many of the professionals who aided the sellers in pretending to manufacture a quality bio diesel, the current cross claimants filed the eleven count cross claim.

E. On page 28 of the Sales Contract at paragraph 11.7 "Right of Setoff Upon notice to Sellers specifying in reasonable detail the basis therefore, Buyer may setoff any amount to which it may be entitled under Article XI. Pursuant to a judgment against Sellers, against amounts otherwise payable under the promissory notes. Neither the exercise of nor the failure to exercise such right of setoff will constitute an election of remedies or limit Buyer in any manner in the enforcement of any other remedies may be available to it. Buyer may also suspend any amounts otherwise payable under the promissory note pending the resolution of any dispute relating to

this Agreement." Notice has, of course, been given.

F. In the last sentence of paragraph 11.7 in the Unit Purchase Agreement clearly authorizes RDX to withhold payment due the Sellers in the event of difficulties with the refinery.   This provision was the result of hard fought negotiations and insisted on by the Buyer who was not provided a reasonable time to conduct due diligence inquiries.

10. RDX paid $10,000,000 down in cash and publically traded stock and signed two promissory notes for a total of $20,000,000 for the refinery with $100,000 monthly payments which were made until August of 2013.   The refinery sits on rented ground with the known cost to make it functional exceeding the RDX purchase price. The buildings and equipment have sat unused since the inability to produce was discovered.

11. The fuel produced has been called "cooked grease."   It had the unfortunate consequence of damaging the end user's equipment which has caused the investigation to commence which eventually led to the RDX officer's discovery of the complete fraud they had been subjected to. RDX has listed millions of dollars' worth of indemnification claims it faces based on damages caused by fuel not able to meet the end user's requirements.

12. The Canadian damages lawsuit makes claim for a little over $150,000,000 against the movant in this action, and others. A current copy of the Canadian Complaint is attached.   It is undergoing the amendment process to add six

Defendants.

13. On page 26 of the sales agreement in paragraph 11.2 "Each Seller, jointly and severally, will indemnify and hold harmless Buyer, and its Representatives, shareholder, subsidiaries and affiliates * * *and will reimburse the Buyer***for any loss, liability, claim damage, expense (including costs of investigation and defense and reasonable attorneys' fees)***."

14. Counsel concedes that some of the elements discussed to determine if cause exists for stay relief as delineated in *In re Curtis* 40 B.R.795, can be analyzed in the movant's favor.  But many cannot.  The New York case is not going to settle RDX's damages claim against the Sellers' officers who participated in perpetrating the fraud, nor the engineers, some outside professionals who falsified reports or failed to exercise due diligence in analysis.  Let me quote from *Curtis ibid*:

"***The automatic stay IS INTENDED 'TO PREVENT A CHAOTIC AND UNCONTROLLED SCRABBLE FOR THE DEBTOR'S ASSETS IN A VARIETY OF UNCOORDINATED PROCEEDINGS IN DIFFERENT COURTS.  The stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgment from different courts and in order to harmonize all of the creditors' interest with one another.' *Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 55(2nd Cir. 1076) cert., denied 429 U.S. 1093, 97 S.Ct.1107, 51 L.Ed.2d540 (1977).  The automatic stay implements two goals.  First, it prevents the diminution or dissipation of the assets for the debtor's estate during the pendency of bankruptcy case.  Second it enables the debtor to avoid the multiplicity of claims against the estate arising in different forums. *In re Larkham,* 31 B.R. 273,276, 10 B.C.D. 1093(Bkrtcy.D.Vt. 1983) Stated Differently, the policy underlying the automatic stay is to protect the debtor's estate from 'the chaos and wasteful depletion resulting from multifold, uncoordinated and possibly conflicting litigations.' *In re Frigitemp. Corp*., 8 B.R. 284,289 (SW.D.N.Y. 1981)" at pages 798 and 799.

15.  A central issue of the narrow action pending styled in contempt is the

imposition by the New York Supreme Court of a constructive trust over $3.1M. It is not clear why the attack is focused on Dennis Danzik and not RDX, the entity which received the tax credits into its refinery operating company, but there is clear law to the effect that the imposition of a constructive trust by a state court might adversely affect the bankruptcy court's determination of what is property of the estate. "The effect of a constructive trust on as bankruptcy as was 'profound.' " *In re SCO Group Inc.*, 2007 WL 4224407, (Bankr. D., Del. Nov. 27, 2007).

16. This court does not have to just take the Debtor's word for the proposition that CWT Parties are Debtors of this Debtor, not creditors. Attached as Exhibits C, D, E, and F are affidavits produced in the previously described Canadian or New York, litigation of former refinery management making it pretty clear what RDX's predecessor, Ridgeline Energy Services, Inc. received for its $30,000,000 purchase commitment.

DONE this 3rd day March, 2016.

              Dennis M. Danzik
              Represented by:

              .

              /s/ Ken McCartney
              KEN McCARTNEY, Bar No. 5-1335
              The Law Offices of Ken McCartney, P.C.
              Post Office Box 1364
              Cheyenne, WY 82003
              Tel (307) 635-0555
              Email: bnkrpcyrep@aol.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 3rd day of March 2016 he caused a true and correct copy of the foregoing Opposition to Stay Relief to be served electronically on the following:

Dan Morse
Assistant US Trustee

Bradley T. Hunsicker
Markus Williams Young & Zimmermann LLC
Attorney for the CWT Parties

Jeffrey M. Eilender,
Bradley J. Nash,
Vitali S. Rosenfeld
*Pro hac vice* counsel for
The CWT Parties

/s/Ken McCartney