IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

FILED

2:03 pm, 4/7/16

Tim J. Ellis
Clerk of Court

| | |
|---|---|
| In re ) | |
| ) | |
| DENNIS MEYER DANZIK ) | Case No.  16-20002 |
| ) | Chapter 11 |
| Debtor(s). ) | |

## MEMORANDUM OPINION

This matter comes before the Court upon the motion of CWT Canada II Limited Partnership and Resource Recovery Corporation (Movants) to modify the automatic stay provided in 11 U.S.C. § 362(a) in order to allow a pending action to continue in the New York state court.[1] A complete review of the record, and weighing all of the relevant factors, indicates that relief from the stay should be granted.

This Court has jurisdiction to hear the Motion for Stay Relief (Motion) pursuant to 28 U.S.C. §§ 157 and 1334. Venue to hear the Motion in this district is proper in accordance with 28 U.S.C. §§ 1408 and 1409. The Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

**FACTUAL AND PROCEDURAL BACKGROUND**

Movants are Defendants and Counterclaim/Cross-Claim/Third-Party Plaintiffs in a pending action in the Supreme Court of the State of New York, County of New York, Commercial Division, captioned *GEM Holdco LLC, et al. v. Changing World Technologies, L.P., et al.*, New York Sup. Ct. Index No. 650841/2013 (New York Action). The cross-claim between Movants and Debtor involves tax credits issued in the name of Renewable Environmental Solution, LLC, (RES) which was under the control of RDX Technologies

---

[1] Unless otherwise noted, all statutory references are to Title 11 of the United States Code.

Corporation (RDX) and further controlled by the Debtor. Movants claim that a sale agreement reserved the tax credits to Movants and required RDX to remit the credits to Movants. Movants further claim that RDX, by and through Debtor's control, failed to do so.

Debtor filed his Chapter 11 bankruptcy petition on January 4, 2016. At the time of the filing, Movants filed the Motion for Stay Relief to complete the New York Action that has been pending for three years in order to liquidate their claims against the Debtor and the Debtor's estate.

**DISCUSSION**

The Court, in determining whether to grant relief from stay, relies upon: (1) the Bankruptcy Code's provision that provides relief from the automatic stay for cause; and, (2) the applicable factors to determine whether to modify the stay to permit litigation against Debtor in another forum.

1. **Section 361(d)(1)**

Relief from the automatic stay "for cause," other than lack of adequate protection under § 362(d)(1) of the Bankruptcy Code, governs Movants' request for relief and provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause…

Because "cause" is not defined in the Bankruptcy Code, relief from stay for cause is a discretionary determination courts make on a case-by-case basis.[2] The bankruptcy court has the power to modify or vacate the stay based on "the particular circumstances of the case and is to be

---

[2] *In re Carbaugh,* 278 B.R. 512, 525 (B.A.P. 10th Cir. 2002).

guided by considerations that under the law make for the ascertainment of what is just to the claimants, the debtor and the estate."[3]

The automatic stay is one of the fundamental debtor protections provided under the Bankruptcy Code.[4] The automatic stay fulfills two goals: 1) to prevent the diminution or dissipation of the assets of the debtor's estate during the pendency of the bankruptcy case; and, 2) to enable a debtor to avoid the multiplicity of claims against the estate arising in different forums.[5] In regards to lawsuits, the policy of the automatic stay is to protect the debtor's estate from "the chaos and wasteful depletion resulting from multifold, uncoordinated and possibly conflicting litigation."[6]

2. **Factors applicable to determining whether to modify the stay to permit litigation against the debtor in another forum**

Congress recognized some circumstances would constitute "cause" to modify the automatic stay to permit an action to proceed before another tribunal:

> "[I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere."[7]

The Utah Bankruptcy Court interpreted the Report's suggestions and reviewed case law around the United States to develop a twelve-factor list (*Curtis* factors) to determine whether litigation should continue in another tribunal.[8] Bankruptcy courts use the *Curtis* factors in their determination of whether stay relief should be granted. The *Curtis* factors are:

---

[3] *Foust v. Munson Steamship Lines*, 299 U.S. 77, 83, 57 S.Ct. 90, 93, 81 L.Ed. 49 (1936).
[4] *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1330 (10th Cir. 1984) (citing H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 340 (1977), 1978 U.S.Code Cong. & Admin.News, pp. 5787, 6297.
[5] *In re Towner Petroleum Co.*, 48 B.R. 182, 185 (Bankr. W.D. Okla. 1985).
[6] *Id.* (citing *In re Frigitemp. Corp.*, 8 B.R. 284, 289 (S.D.N.Y.1981).
[7] H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 343–44 (1977), 1978 U.S.Code Cong. & Admin.News, p. 6300. See also S.Rep. No. 95–989, 95th Cong., 2d Sess. 52 (1978), 1978 U.S.Code Cong. & Admin.News, p. 5838.
[8] *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984).

(1) whether the relief will result in a partial or complete resolution of the issues;

(2) the lack of any connection with or interference with the bankruptcy case;

(3) whether the foreign proceeding involves the debtor as a fiduciary;

(4) whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases;

(5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6) whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

(7) whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;

(8) whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);

(9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);

(10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and,

(12) the impact of the stay on the parties and the "balance of hurt."[9]

One who seeks relief from the automatic stay to continue litigation in a different tribunal must first establish cause, for such relief. The burden then shifts to the debtor to establish he is entitled to the stay.[10]

**ANALYSIS**

In applying the Curtis factors, the Court finds that movants made a prima facie case for granting relief from the automatic stay "for cause."

---

[9] *Id.*

[10] *In re Towner Petroleum Co.*, 48 B.R. at 191.

1. Resolution of the Issues. The New York Court has ruled that the tax credits do not belong to Debtor.[11] In this regard, there is no issue to be resolved. Additionally, the New York Court held a multi-day hearing to address whether it should hold Debtor in contempt.[12] Allowing the New York Court to enter its order will resolve that issue. Further, Debtor has not presented any argument that the litigation involves any issues that are within the exclusive jurisdiction of this Bankruptcy Court. This factor weighs in favor of granting relief.

Debtor argues this factor favors denying relief: "The New York case is not going to settle RDX's damages claim against the Sellers' officers who participated in perpetrating the fraud, nor the engineers, some outside professionals who falsified reports or failed to exercise due diligence in analysis."[13] This assertion is misplaced. First, to the extent RDX has a claim against Movants, the Arizona Bankruptcy Court should address that matter in RDX's Chapter 11 case. Similarly, Debtor has not asserted or established that he has personal claims on the same asserted grounds. He is not listed as plaintiff in the Canada action involving these issues. Finally, to the extent these assertions are related to defenses already asserted in the New York Action, that court has struck these defenses. The alleged fraud issues, as it pertains to Debtor individually, are resolved and this Court should not relitigate the issue.

2. Lack of Connection or Interference with the Bankruptcy Case. Debtor admits that the tax credits belong to the Internal Revenue Service ("RDX and Danzik have asserted the funds being fought over are the property of the Internal Revenue Service.")[14]  Therefore, the monies are not an estate asset, and, because this is a Chapter 11 bankruptcy case, creditors' claims must be liquidated. Entry of a final judgment will assist this Court, as oppose to interfere, as it will

---

[11] Brief in Support of Motion for Relief from Stay, Ex. A, Declaration of Jeffrey M. Eilender (D.E. 47)
[12] *Id.*.
[13] Debtor's Objection to Motion for Relief from Stay, ¶14 (D.E. 61).
[14] *Id.* at ¶ 6.

allow the claim to be properly addressed and handled, to the extent necessary, through Debtor's plan of reorganization. If the Court were to deny relief, the parties would need to re-start the entire process to determine the validity and/or amount of any claim related to the tax credits. This would only cause duplication, delay, and additional expense.

Arguably, a contempt remedy could indirectly interfere with the administration of the estate, especially if the court orders jail time. While this could favor denying relief, the majority of courts that have considered this issue have held that the enforcement of a civil contempt order is outside of the scope of the automatic stay provided the primary purpose of the issuing court is to uphold the court's dignity.[15] The Court does not believe relief from stay will unnecessarily interfere with the bankruptcy case. This Court will retain its jurisdiction to adjudicate, as necessary, the impact of the state court's orders on property on the bankruptcy estate. Stay relief will be limited to the entry of judgments in the New York Court. Any enforcement of the judgment must occur in the Bankruptcy Court. Accordingly, factor number two weighs in favor of relief from stay.

    3. <u>Debtor as a Fiduciary</u>. The Court's ruling in the Attachment Order results in creating a constructive trust with Debtor as the trustee of the tax credits. However, it is unclear that this is the type of fiduciary duty with which this factor is concerned.[16]

    4. <u>Specialized Tribunal Better Suited to Determination of the Issue.</u> The case is before the Commercial Division of the Supreme Court of New York, County of New York. This is a specialized division comprised of a small group of elite, specially-trained and experienced

---

[15] *See In re Lowery*, 292 B.R. 645, 649-50 (Bankr. E.D. Mo. 2003) (citations omitted).
[16] *In re Dampier*, 523 B.R. 253, 257 (Bankr. D. Colo. 2015) aff'd, No. BAP CO-15-006, 2015 WL 6756446 (10th Cir. BAP (Colo.) Nov. 5, 2015).

judges, who handle complex commercial litigations. Thus, New York has established a specialized tribunal to deal with these cases, and the Judge has been handling the case for the past three years. The New York Court is familiar and experienced with the causes of action alleged, the parties involved, and the facts of the New York Action. It rendered numerous rulings and orders in connection with the New York Action. The issues involved in the litigation do not require the expertise of a bankruptcy judge. In regards to the contempt issue, the New York Court is entitled to exercise its inherent power to enforce a contemnor for improper past acts that affronted the court's dignity and authority. This factor weighs in favor of relief from stay.

    5. <u>Costs to Litigate Borne by Insurance Carrier.</u> There does not appear to be an insurance carrier involved in this case.

    6. <u>Third Party Liability and Debtor Functions as Bailee or Conduit.</u> Movants assert that Debtor was the bailee of the tax credits. Again, Debtor admits the tax credits are not property of the estate, but disagrees as to whom the tax credits belong. Debtor holds the tax credits as a constructive trust given the Attachment Order ruling that he does not have legal or equitable rights in the property. Property subject to a trust is not property of the bankruptcy estate.[17] Cause for relief from stay may also include recovery of embezzled property if the creditor/movant is able to trace funds and prove that such funds were never property of the debtor's bankruptcy estate.[18] This factor weighs in favor of granting relief.

    7. <u>Whether the Litigation Prejudices the Interests of Other Creditors.</u> As argued by Movants, if the property is not property of the estate, there is no prejudice to Debtor's other creditors. Debtor does not assert prejudice. Delay caused by repeated litigation or the inability to confirm a plan pending resolution of the tax credits actually prejudices creditors. The fact that

---

[17] *In re Foster*, 275 F.3d 924, 926 (10th Cir. 2001).
[18] *In re Birchall*, No. 07-13232-WCH, 2007 WL 1992089, at *9 (Bankr. D. Mass. July 3, 2007).

the lawful and appropriate resolution of a legal claim may result in a reduced potential for recovery by the estate does not constitute legal prejudice to the rights of creditors.[19]

Only one creditor, Sigma Opportunity Fund, II LLC objected. However, its objection does not involve the substantive merit of Movants' claims. Instead, Sigma, having filed its own motion for relief from stay, requests that the Court treat the parties, Movants and Sigma, the same regarding granting relief. This factor weighs in favor of granting relief.

8. Equitable Subordination. There is no basis upon which the Court may determine whether Movants' claim is subject to equitable subordination under Section 510(c). Neither party addressed this factor.

9. Avoidable Lien. The Court cannot presently determine whether a judgment against the debtors in the New York Action would result in a voidable judicial lien under Section 522(f). Movants assert that it will not and Debtor does not refute this factor.

10. Judicial Economy and Expeditious Determination of the Issues. The New York Court's steps necessary to finalize these matters are minimal when compared to the resources that this Court and parties would expend re-litigating the issues. As previously addressed, the cost to re-start the process would far exceed any cost to finalize the matters in the New York Court. This factor weighs in favor of granting relief.

11. Preparation of State Court Action for Trial. Movants' strongest argument is the status of the New York Action. Permitting the action to proceed to completion in another tribunal contemplates the situation in which Debtor is a party to a prepetition action that has progressed to the point where it would be a waste of the parties' and the court's resources to begin anew in this Court. The New York Court has ruled that the tax credits do not belong to Debtor and has

---

[19] *In re Horizon Womens Care Prof'l LLC*, 506 B.R. 553, 559 (Bankr. D. Colo. 2014).

held a contempt hearing. These actions are past the point of trial. The steps taken to finalize these matters in the New York Court are minimal when compared to the resources that the Court and parties would expend re-litigating in this Court. This factor weighs in favor of granting relief.

    12. <u>The Balance of Hurt.</u> Financial hardship to Movants must, of course, be balanced against financial hardship to the debtors. The court should not shift the financial burden from another party to the debtors. "To do so would contravene the fundamental policy in favor of economic administration of debtors' estates."[20] The Court is mindful the impacts on stay relief on Debtor who must also devote time to his Chapter 11 case. But, the issues appear to have been mostly determined in the New York Action. Allowing the New York Court to enter final judgment, following hearings that have already taken place, will result in little to no cost to the Debtor. Maintaining the automatic stay, and requiring this Court to address the tax credits in this Court, would result in substantial financial hardship to both Debtor and creditors. This factor weighs in favor of granting relief.

    Debtor's counsel concedes that some of the *Curtis* factors can be analyzed in Movants' favor, but argues others cannot. The Debtor argued that the New York Action is not going to settle RDX's damage claim against the Seller's officers who allegedly participated in perpetuating fraud or the outside professionals who allegedly falsified reports or failed to exercise due diligence. As this Court stated previously, this assertion is misplaced and the Arizona Bankruptcy Court is the proper jurisdiction to address matters related to the RDX Chapter 11 bankruptcy case.

    The overriding theme in determining whether to grant relief from the stay to permit litigation against Debtor in another forum is the effect of such litigation on the administration of

---

[20] *In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984).

the estate. As previously explained, allowing the Court to enter a final judgment will actually assist this Court and the estate as it allows for more expeditious resolution and plan confirmation.

The Court also considers the "likelihood of success" factor as applied in the case of *Chizzali v. Gindi.*[21] Courts should tread lightly in rendering opinions as to a likely resolution of the factual and legal issues involved in a state court lawsuit.[22] In this case, however, the New York Court has already ruled against Debtor, which demonstrates Movants have been successful.

As the Court stated above, its analysis of the Curtis factors reflect that the Movant met its burden establishing a prima facie case that it is entitled to relief from the stay. The burden then shifted to the Debtor to establish he is entitled to the stay. Debtor failed to meet that burden.

**CIVIL CONTEMPT ACTION**

The majority of courts rule that the automatic stay does not apply to civil contempt actions when the proceeding is to uphold the dignity of the court. "These courts base their rulings on the belief that the automatic stay provisions were not intended to deprive state courts of the ability to compel compliance with their orders."[23] "Congress did not intend to strip non-bankruptcy courts of their inherent authority to enforce their own orders by allowing parties to escape the consequences of willfully disobeying orders by filing a petition for relief under the Bankruptcy Code."[24] Contempt proceedings arising out of a debtor's disobedience of a court order are not stayed when the court entered the disobeyed order prior to the filing of the petition

---

[21] *Chizzali v. Gindi. (In re Gindi),* 642 F.3d 865 (10th Cir. 2011), *overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.,* 661 F.3d 495 (10th Cir. 2011).
[22] *In re Dampier*, 523 B.R. 253, 259 (Bankr. D. Colo. 2015) aff'd, No. BAP CO-15-006, 2015 WL 6756446 (10th Cir. BAP (Colo.) Nov. 5, 2015).
[23] *In re Birchall*, No. 07-13232-WCH, 2007 WL 1992089, at *8 (Bankr. D. Mass. July 3, 2007).
[24] *In re Lowery*, 292 B.R. 645, 650 (Bankr. E.D. Mo. 2003) (citing *U.S. Sprint Communications v. Buscher,* 89 B.R. 154, 156 (D. Kan. 1988)).

in bankruptcy.[25] A debtor "can't get himself in contempt, get the case continued, then go over there and file bankruptcy to avoid contempt of this court. It doesn't work that way."[26] Debtors cannot invoke the bankruptcy process "to immunize contumacious behavior."[27] A court must be able to use civil contempt to uphold the dignity of the Court.[28]

Regardless, other courts rule that cause exists for lifting the stay in civil contempt proceedings if the underlying purpose of continuing the contempt action is to "uphold the dignity of the court."[29] If the underlying purpose in the contempt action is "calculated to enforce a money judgment, pursue a 'collection motive,' or to harass a defendant," then relief from the stay is not appropriate.[30]

It is clear from the transcript attached to Movants' motion that the Judge was acting to enforce its order and uphold the dignity of the court:

> Even if you produce everything which had not happened within the last couple of weeks in the last couple of days, that to me is extremely prejudicial when there is a hearing today. But beyond that, I am not even looking at that. What I really am concerned with is the power of the Court. If this Court's orders are ignored repeatedly, we can't have a viable court system. And, as I said earlier, it is not just disrespect for the Court which, of course, is a concern, but it is more than disrespect for the Court. It is the fact that the Court can't enforce any order or any judgment if it is totally ignored. It undermines the power the Court, which is a very serious problem. This Court just can't stand by and watch that happen.[31]

It should also be noted that the Attachment Order only requires Debtor to set the money in a separate account. It does not require payment to any plaintiff or creditor. Therefore, any

---

[25] *In re O'Brien*, 153 B.R. 305, 308 (D. Or. 1993); *see also In re Cummings*, 201 B.R. 586, 589 (Bankr. S.D. Fla. 1996); *Guariglia v. Cmty. Nat. Bank & Trust Co.*, 382 F. Supp. 758, 761 (E.D.N.Y. 1974) *aff'd sub nom. Guariglia v. Cmty. Nat'l Bank & Trust Co.*, 516 F.2d 896 (2d Cir. 1975).
[26] In *re O'Brien*, 153 B.R. 305, 308 (D. Or. 1993).
[27] *Summit Fin. Res., L.P. v. Walthers Oil Co.*, No. 2:07-CV-949TS, 2008 WL 183380, at *2 (D. Utah Jan. 18, 2008).
[28] *Id.*
[29] *In re Lincoln*, 264 B.R. 370, 374 (Bankr. E.D. Pa. 2001).
[30] *Id.*
[31] Brief in Support of Motion for Relief from Stay, Ex. 13, Page 70-71 (D.E. 47).

contempt action that motivates Debtor to set aside money is enforcement of an attachment order and not a collection on a judgment.

**CONCLUSION**

The Court finds that this case would be more conveniently administered if the stay is lifted since the New York Court is in the best position to complete relief to the parties. Movants have established that their claim could be liquidated more expeditiously or economically in the New York Action. Relief from the stay will advance, rather than frustrate the administration of this case. The mechanism for a speedy adjudication of the merits of Movants' claim, overall judicial economy and the interests of the parties, therefore, favor relief from stay.

The Court has considered each of the applicable *Curtis* factors and finds that they support granting relief from stay in order to allow the New York action to continue against Debtor. Relief is limited to the entry of judgments and to allow the New York Court to enforce its own orders. Movants may not take or maintain any collection actions.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

BY THE COURT

*Cathleen D. Parker*    4/7/2016

Honorable Cathleen D. Parker
United States Bankruptcy Judge

Service to:
 Ken McCartney
 Brad Hunsicker/Jeffrey Eilender
 Paul Hunter